STIEWEL *v.* FENCING DISTRICT NO. 6 OF JOHNSON COUNTY.

Opinion delivered July 16, 1902.

1. JUDGMENT—PRESUMPTION.—A finding of the county court, in a proceeding to establish a fencing district, that two-thirds of the owners of land within the district signed the petition for the creation of the district raises a *prima facie* presumption, which is not rebutted by the tax-books showing a greater number of owners than the court found within the district. (Page 20.)

2. FENCING DISTRICT—RAILROADS.—The fencing district act of April 15, 1891, does not apply to the right of way, roadbed and depots of a railroad company. Following *Little Rock & F. S. Ry. Co.* v. *Huggins*, 64 Ark. 432. (Page 21.)

3. SAME—COUNTY FARM.—A county farm, held for the care and support of adjudged paupers, is exempt from assessment for a local improvement. (Page 21.)

4. JUDGMENT—PRESUMPTION.—A finding of the county court, on establishing a fencing district, that certain lands included in such district are not subject to assessment raises a *prima facie* presumption either that such lands were not benefited or that they were otherwise exempt under the constitution and statutes. (Page 21.)

5. DEVIATION FROM PETITION—AMENDMENT.—Where the original petition for the creation of a fencing district described the boundaries of the proposed district and recited that necessary deviations might be made, a deviation made at the instigation of the original petitioners, as well as of the owner of the land involved, is equivalent to an amendment of the original petition. (Page 22.)

6. ASSESSMENT FOR LOCAL IMPROVEMENT—PRESUMPTION OF BENEFIT.—A finding of the county court that land situated in a fencing district is liable to assessment raises a *prima facie* presumption that the property will be benefited by the improvement. (Page 23.)

7. FENCING DISTRICT—OATH OF BOARD.—Sand. & H. Dig., § 1178, providing that each member of the board of a fencing district shall take a prescribed oath, is mandatory. (Page 23.)

8. SAME—IRREGULARITIES—LIMITATION.—Irregularities in a proceeding to establish a fencing district which are not of a fundamental nature, such as a failure of the members of the board to take the oath required by Sand. & H. Dig., § 1178, are barred, under § 1189,

*id.*, by failure to institute an action to test the validity of the assessment within 20 days after publication of the order of assessment. (Page 24.)

9. SAME—ASSESSMENT—INTEREST.—The county court had authority to order an assessment to be levied on a fencing district of a sum which could be discounted at 6 per cent. for enough to pay the actual cost of building the proposed fence. (Page 25.)

10. SAME—ADVERTISEMENT FOR PROPOSALS.—Sand. & H. Dig., § 1200, providing that fencing boards "may advertise for proposals for doing any work by contract," is directory merely, and does not inhibit such boards from letting a contract without advertisement. (Page 26.)

11. FAILURE OF BOARD TO MAKE REPORT—LIMITATION.—The failure of a fencing board to make a written report of the plans of the work, and of the estimated cost thereof, to the county court, as required by Sand. & H. Dig., §§ 1182, 1184, is waived by failure to institute an action to test the validity of the proceeding within 20 days after publication of the order of assessment. (Page 26.)

12. SAME—ASSESSMENT—BENEFITS.—Sand. & H. Dig., § 1184, providing that the county court shall assess the cost of the fencing "upon the land in said district, assessing each parcel of land according to its value as shown by the last county assessment on file in the office of the county clerk," does not contemplate that land may be assessed in excess of the benefits to be derived by it from the fence. (Page 27.)

13. LIMITATION—REASONABLENESS.—The limitation of 20 days, fixed by Sand. & H. Dig., § 1189, for contesting the regularity of assessments for fencing districts, considering the nature of the improvement and the steps to be taken to initiate and complete it, is not unreasonably short. (Page 28.)

14. ASSESSMENT—COAL MINES.—While coal mines, as such, should not be included in fencing districts for purposes of assessment, land overlying coal may be included in the assessment if it is also useful for agricultural and kindred purposes. (Page 29.)

Appeal from Johnson Circuit Court in Chancery.

WM. L. MOOSE, Judge.

Affirmed.

*P. C. Dooley,* for appellant.

Appellee had no power to maintain this action. Art. 19, § 27, Const. The consent of the property owners to establish a district

and levy a tax must be given in the manner prescribed by law. Sand. & H. Dig., § 1176; 50 Ark. 125; 108 N. Y. 373; 2 Dill. Mun. Corp. 769; 59 Ark. 358; Beach, Pub. Corp. § 1180; 117 U. S. 683; 71 N. Y. 309; 108 N. Y. 373; 1 Dill. Mun. Corp. § 457. The failure to obtain the consent of a majority of the owners renders all proceedings void. 10 Col. 122; 145 Ill. 80; 58 Cal. 206; 28 Ark. 360; 31 Pac. 474; 11 Md. 186; 15 Mr. 18. The power to tax is the strongest of government. 20 Wall. 265; 4 Wheat. 431; 42 Ark. 87. The tax is void because same is not uniform and equal. Const., art. 16, § 6; Const. U. S., amendment 1. This act is confiscation. 35 Ark. 420; 95 U. S. 294; 50 Cal. 388; 48 Ark. 382; 51 Pa. St. 9; 25 Ark. 289; 32 Ark. 31; 34 Cal. 432; 43 Cal. 331; 19 W. Va. 408; 5 Ohio St. 589. The power to exempt land benefited from taxation is an absurdity. 57 Ark. 555; 55 Ark. 289; Cooley, Tax. 162-178; Desty, Tax. 1138; Cooley, Tax. 428; 69 Pa. St. 145; 44 Vt. 174; 21 Ark. 40; Cooley, Tax. 661. There can be no justification for proceedings which charge the land with an assessment greater than the benefits. Cooley, Tax. 147; Desty, Tax. 121-146; 53 Miss. 246; 172 U. S. 269; 65 Ark. 343; 68 Ark. 377; 172 U. S. 269. The district as formed does not conform with that asked by the landowners. Sand. & H. Dig., § 1176; 71 N. Y. 309; 117 U. S. 683. The tax cannot be enforced because appellant's property was not benefited by it. Cooley, Tax. 416, 417; 48 Ark. 382; 117 U. S. 683; 172 U. S. 269; 3 Ia. 82. There was no legal fencing board when the tax was created, and the property could not be bound. Sand. & H. Dig., § 1178; 21 Ark. 284; 52 Ark. 511. The board proceeded without authority. 50 Ark. 131; 134 U. S. 632; 10 Col. 129; 32 Ill. 193; 59 Cal. 233; 59 Ark. 362; 58 Ark. 276; 30 Ark. 131; 48 Ark. 251. Special improvement district statutes must be strictly construed. 67 Ark. 42; 48 Ark. 451; 55 Ark. 562; 58 Ark. 181; 59 Ark. 483; 64 Ark. 439; 56 Ark. 419; 11 Ark. 157; Vanfleet, Col. Att. § 165; 69 N. Y. 242; 2 Brad. & B. 691; 47 Ark. 445. Want of jurisdiction may be shown. 18 Wall. 464; 7 Sawyer, 401; 9 Fed. 245.

*J. E. Cravens,* for appellee.

The board was legally formed, and proceeded with authority. Sand. & H. Dig., §§ 1178-79; 3 Am. St. 176; 74 Ga. 416; 38 Conn. 449; 95 Ill. 593; 5 Am. & Eng. Enc. Law, 96; 49 Ark. 442; 55

Ark. 81; 43 Ark. 243; 52 Ark. 213; 55 Ark. 200. No jurisdiction being clear, the question need not be raised. 45 Ark. 346; 62 Ark. 439. The correctness of county court's judgment will be presumed. 50 Ark. 181; 55 Ark. 275; 56 Ark. 354; 64 Ark. 432. The deviations complained of were slight. 64 Ark. 555. The board was not required to report its plans to the county court. Sand. & H. Dig., §§ 1102, 1184, 1118. All irregularities are barred. Sand. & H. Dig., §§ 5335, 5336, 5322, 1189; 52 Ark. 213; 67 Ark. 30; 30 Ark. 101.

WOOD, J. This is a proceeding by complaint in equity under the statute to have the lands of appellant sold for taxes assessed against them for Fencing District No. 6 of Johnson county. The appellant contends that the assessment is invalid:

1. Because two-thirds of the landowners did not sign the petition asking for the district. The order of the county court establishing the district recites: "The court being convinced that the petitioners are in number more than two-thirds of the owners of land within the district, it is the judgment of the court," etc.

This is also recited as a fact in the petition. Counsel for appellant says: "The tax book in evidence in this cause shows that there were in the district 154 landowners; that it appears, by comparison of the names on the tax books with those on the petition for the formation of the district, that forty-seven of the names on the petition owned no land in the district. The number of names on the petition is 118. Deduct the 47, and there are only 71 names remaining. To have the necessary two-thirds to confer jurisdiction, there should be 102." Learned counsel thus makes the mistake of treating the tax books as the only and conclusive evidence of who were the owners of land in the district, whereas the tax books, at most, could only be considered as *prima facie* evidence of who were the landowners of the district. Ownership of land is constantly changing. Lands owned by one man may appear assessed in the name of another. The tax books would not be sufficient, and there is no other evidence in the record sufficient to overturn the recital in the petition and the finding of the county court.

The record of the county court showing the necessary jurisdictional facts should at least be presumed as *prima facie* correct, placing the burden upon him who questions the court's jurisdiction to show that it did not have it. *State ex rel., etc.,* v. *Nelson,*

57 Wis. 147. But see on the burden of proof, section 1193, Sand. & H. Dig., and *Kansas City, P. & G. Ry. Co.* v. *Waterworks Improvement District No. 1, Siloam Springs,* 68 Ark. 376. In this view it is unnecessary for us to determine whether or not in this special statutory proceeding the finding of the county court on the question of jurisdiction would be conclusive against collateral attack, as is contended by counsel for appellee.

2. It is contended that the assessment is void because it is not equal and uniform upon all the land of the district subject to the tax. In this connection counsel for appellant says: "Six miles of the right of way and roadbed of the Little Rock & Fort Smith Railroad and its station house, side tracks and freight depot are in the district, but not taxed; also a farm owned by Johnson county is in the district, but not taxed." It is also insisted that certain lands of a college and another tract of Colonel Cravens should have been taxed.

We held in *Little Rock & F. S. Ry. Co.* v. *Huggins,* 64 Ark. 432, that the fencing district act does not apply to the property of railroads. The doctrine announced by this court in *Board of Improvement* v. *School District,* 56 Ark. 354, would exempt the county farm of Johnson county, held for the care and support of its poor, from this special assessment for the local improvement.

We must conclude, since the law does not permit the right of way, roadbed, etc., of the railroad and the county poor farm to be assessed for the fencing district, that the petitioners included them from considerations of convenience, economy or feasibility, and not because they thought such property would be benefited, or with the view of having it assessed. The county court, whose duty it is under the law to make the assessment, having omitted to assess the railroad property and the county farm for the poor, as well as the other property which it is claimed should have been assessed, will be presumed to have omitted the former because they could not be taxed under the law, and to have omitted the latter because it was not benefited. This at least would be the *prima facie* presumption. *Kansas City, P. & G. Ry. Co.* v. *Waterworks Imp. Dist. No. 1, Siloam Springs,* 68 Ark. 376.

But, conceding that the railroad and county farm, like the other property in the district, would be liable to assessment, if benefited, there is no proof that any of the property within the district omitted from assessment is benefited. If its inclusion by the

petitioners and the county court raised the primary presumption that it was benefited in the first instance, this presumption was afterwards overcome by the action of the county court in not assessing it, and the burden would still be upon the appellant to show that the property was benefited.   In *Moore* v. *People,* 106 Ill. 376, the court says:   "It is also urged that the assessment is void for the reason that the right of way and franchise of Indianapolis, Bloomington & Western Railway Company, which runs through the district, and the public highways, were not assessed, while they were benefited.   It was a duty resting upon the commissioners to determine what property was benefited, and what was not, and their determination, when called in question for the first time on the application for judgment against the land assessed, must be held conclusive, in the absence of fraud."

We do not go so far.   But we do hold that the establishment of the fencing district, on the petition of the land owners by the order of the county court, the agency named by the legislature for that purpose, and the finding by the county court that certain lands in the district are subject to assessment, raise the *prima facie* presumption that such lands are benefited by the improvement, and, on the other hand, the finding by the county court that certain lands within the district are not subject to assessment raises the *prima facie* presumption that they are not benefited, unless otherwise exempt under the constitution and statutes.

3.   It is urged that "the district, as formed by the county court, does not correspond with the district asked for by the landowners."   The original petition describes the boundaries of the district proposed, and recites:   "The line of the fence around said proposed district will be the lines aforesaid, except when necessary deviations may be made to cross streams or to avoid special injury to the owners of the lands over which the line passes, or to find ground near by over which it is more practical to erect a fence, when the same can be done without injury to the owners."

It is recited in the order of the court establishing the district that:   "The line of the fence around said district shall be upon the lines aforesaid, except when necessary deviations may be made to cross streams or to avoid special injury to the owners of the land over which the line passes, or to find ground near by over which it is more practical to erect a fence, when the same can be done without injury to the owners, and, if on land not within the

lines aforesaid, with the permission of the owners, without the same being subject to tax for erecting and maintaining the fence."

After the filing of the original petition, one J. J. Quick presented a petition, in which he says: "He did not sign the original petition, but that he is willing to sign the same provided the line shall be extended west through the south half, southwest quarter of secton 32, township 10 north, range 24 west, to the western border of said section, and thence south to the point of beginning, and that this will not lengthen the line of fence an inch, and that, with the assent of the original petitioners, he prays that this be taken and regarded as his and their petition for such change."

The order of the court recites: "The lines through the two westerly forty-acre tracts above-named, viz: Southwest half of the southwest quarter of section 32, township 10 north, range 24 west, being made at the instigation of the petitioners and J. J. Quick, the owner of said lands, and not lengthening the line of the fence."

It appears from this that the owners on the original petition adopted the change proposed by Quick's petition. It is tantamount to amending their petition to cover the change proposed by Quick. There was therefore no material divergence from the petition in establishing the boundaries of the district. The petition and the order contemplated slight variations. The petition for local improvements as the statute requires is, of course, jurisdictional. Here there was such petition, and an order establishing the district in substantial conformity therewith.

4. What we have said under the second subdivision disposes of appellant's contention that his property cannot be taxed because it is not benefited. There is no proof that his property is not benefited, and the determination of the county court in that regard is *prima facie* correct.

5. The statute, section 1178, Sandels & Hill's Digest, requires each member of the board to take the oath of office prescribed by article 19, section 20, Constitution of Arkansas, and in addition thereto an oath *"that he will not, either directly or indirectly, be interested in any contract made by the board, which oath shall be filed in the office of the county clerk."* An oath was made on March 3, 1900, but omits the statutory requirement in italics above. On March 20 the contract was made. On March 24, four days after, an amended oath was filed, embracing the statutory requirements. Appellant contends that the full and complete statutory

oath was necessary to constitute a board. These special statutory proceedings whereby landowners may be deprived of their property without their consent must be strictly pursued. Every provision intended for the protection of the landowner must be regarded as mandatory. It is not for the courts to declare immaterial what the legislature has required to be done. That the legislature did not consider that the oath prescribed by the constitution would be sufficient is shown in the fact that they prescribed that each member of the board should take the oath that "he will not, either directly or indirectly, be interested in any contract made by the board."

It was shown in this case that a subcontractor, who had a contract to supply and set fence posts to inclose the district, gave to Westmoreland, a brother-in-law, who was president of the fencing district board, a half interest in his contract to assist in getting out and setting up the posts called for by his contract, and the witness swears that such contract was given to the president of the board because he was a member of the board, and had the acceptance or approval of the fence. We would not impugn the integrity of the parties to this arrangement. Their contract might have been performed with the utmost fidelity and honesty. But the apprehension that, where such conditions exist, the conduct of the parties would not be marked by good faith and efficiency, doubtless induced the legislature to incorporate the special features in the oath to be taken. No court should question the wisdom or ignore the mandatory character of such a provision. The landowners who signed, and who did not sign, the petition were alike vitally interested in its enforcement. Judge Cooley, speaking of the imperative character of such statutory enactments, says: "Where, therefore, the commissioners for such an improvement are required to take an oath faithfully and fully to discharge their duties, and they fail to take it, or take a different one, their proceedings are illegal and void." Cooley, Tax. 660; citing *Merritt* v. *Port Chester*, 71 N. Y. 309, which cites *Cambria Street*, 75 Pa. St. 357, and other cases.

We agree, therefore, with counsel for appellant that the board was not properly constituted on account of the failure of its members to take the oath prescribed by the statute before the contract was let for building the fence.

What was the effect of this on the assessment?

This statute provides that, "within seven days from the making of the order [of assessment] mentioned in the last section of this act, the county clerk shall publish a copy of the same in some newspaper published in the county one time, if a newspaper be published in the county; and, if not, then by posting said copy at the court house door, and posting not less than ten copies thereof in the district; and anyone who may feel aggrieved thereby may object to the assessment; and such person shall commence legal proceedings for the purpose of trying the validity of said assessment within twenty days after the date of publication, or else he shall be forever barred in all courts of law or equity from questioning the validity of the assessment and the lien created thereby." Sand. & H. Dig., § 1189. Defects in the proceedings that were jurisdictional and therefore fundamental and indispensable from the beginning, the legislature could not cure by a limitation statute. The landowner is entitled to his day in court as to these at any time during the progress of the proceedings to subject his property. Such jurisdictional objections, for instance, as we have been considering, viz., that there was no petition such as the statute requires. These the legislature could not dispense with in the first instance, and therefore it is powerless to cure their omission. *Radcliffe* v. *Scruggs*, 46 Ark. 96.

But the failure to take the oath prescribed was not one of these prerequisites. It was not foundational. The legislature might have provided an entirely different agency and method of getting at the cost of the improvement, and might have dispensed with the oath prescribed, or any oath whatever. Therefore, however fatal to the assessment, if raised in time, the twenty days is an effectual bar.

6. It appears that $8,668.80 was the cash value of the fence. The fencing district did not have the cash. To enable it to procure the cash, it approved a contract for $12,390, a sum which could be discounted for the requisite cash. The board could only pay out of the annual levies, and these could not exceed one per centum of the assessed value of the land within the district.

The proof showed that about one thousand dollars annually were realized from the levy. It would have taken something over twelve years to repay the loan of $8,668.80, at 6 per cent. per annum interest. The board recommended, and the court ordered, an assessment of $13,000 as the total cost of the improvement.

The extra $610, it appears from the report of the board asking for the assessment, were "for surveyor's fees and such other agents as might be needed."

Assuming, for the purpose of considering this point, that the board was duly constituted, it did not exceed its powers in entering upon this contract. *Fitzgerald* v. *Walker,* 55 Ark. 148.  For aught that appears to the contrary, it was the best and only method for having the work done.  The board had authority to have the work done.  No fraud is charged or shown.  The $13,000, reported as the estimate of the cast, were correct, in view of the facts of which the county court was cognizant when it approved the contract by making the levy as asked for by the board.

7.  Objections are made that the board did not advertise for bids, and did not form plans for the work.  The statute providing that the board "may advertise for proposals for doing any work by contract."  Section 1200 is directory merely.  The statute requires that the board "shall form plans for the building of a good and lawful fence and all necessary gates to enclose and protect said district, and shall procure estimates of the cost thereof."  Sand. & H. Dig., § 1182.  In the report made by the board to the county court it is recited that "the board formed plans for the building of a good and lawful fence, * * * and also procured estimates of the cost thereof, which estimates approximate the sum of $13,000."  It thus appears from the report that the baord did "form plans," and did procure an estimate of the cost, and did report the latter to the court.  It is true, however, that no written plans and specifications were filed with the county court before the assessment was made.

Section 1184 provides:  "As soon as said board shall have formed said plan and shall have ascertained the cost of the fencing, it shall report the same to the county court."  The proof shows that the members of the board talked over these matters with the county judge, and that he was thoroughly advised of the plans of the work.  It will be noticed that the statute does not, in express terms, require a written report to be made to the county court, nor is it specific that both the plans and the estimate of the cost shall be reported.  The word "same" might be construed to refer only to "the cost of the fencing."  We are disposed, however, to construe the statute as requiring a written report both of the plans and the estimated cost of the fencing to the county court,

as that construction will best safeguard the interests of the land-owner.

The failure to make a written report of the plans of the work and the estimated cost thereof to the county court is one of the things that the legislature might have dispensed with, and therefore cannot avail appellant in this proceeding.

Indeed, all the objections to the validity of this assessment discussed by us in the fifth, sixth and present subdivision of this opinion relate to the methods adopted for the ascertainment of the cost of the improvement and the manner of making same. If otherwise well taken, they are nevertheless under the ban of the twenty days' limitation. Appellant, being with the fencing district, must be treated as having had notice of them (*Fitzgerald v. Walker,* 55 Ark. *supra*), and cannot claim now to have been prejudiced thereby.

8. This brings us to consider that provision of the statute which requires the county court to "assess said cost upon the land in said district, assessing each parcel of land according to its value as shown by the last county assessment on file in the office of the county clerk." Sand. & H. Dig., § 1184. We held in *Ahern v. Board Improvement Dist. No. 3 of Texarkana,* 69 Ark. 68, that an assessment according to value did not preclude an inquiry into the special benefits received by the property improved. Special assessments for local improvements find their only justification in the peculiar and special benefits which such improvements bestow upon the particular property assessed. This is generally recognized by the authorities. Cooley, Tax. § 1416; *Thomas v. Gain,* 35 Mich. 155; 2 Dillon, Dun Corp. (4th Ed.), § 761; *Cribbs v. Benedict,* 65 Ark. 555; *Norwood v. Baker,* 172 U. S. 269. Therefore, any statute which authorizes an assessment greater than the special benefit to the property would be unconstitutional.

While the statute under consideration does not in express terms limit the assessment to the amount of the benefits received, that must necessarily be understood. For the legislature was familiar with the provisions of the constitution of the United States and our own constitution, forbidding any person to be deprived of property without due process of law and without just compensation. Our statute must be interpreted as if these provisions were written in it. Therefore, while the statute permits the cost of the improvement to be assessed against the property, it

must necessarily mean provided such cost does not exceed the benefits received by the improvement.

The legislature having provided for the improvement district and the manner in which such improvements shall be made and the costs thereof ascertained, when the district is constituted by the designated agents, and the costs of the improvement are ascertained and assessed, it will be presumed that the property included in the district is benefited, and that the assessments for the costs of the improvements do not exceed the benefits. *Matthews* v. *Kimball,* 70 Ark. 451.

This presumption may, however, be rebutted by proof, when the action is brought, or within the twenty days allowed the party aggrieved to call in question the validity of the assessment. Such has not been done, however, in this case.

We have discussed the various objections raised to this statute, not because they were all necessary to the decision of this cause, but because the constitutionality of the fencing act is raised for the first time in the question of the validity of this assessment, and the settlement of the various questions now may save us much labor hereafter.

Finding no error, the judgment of the circuit court is affirmed.

ON REHEARING.

Opinion delivered December 13, 1902.

WOOD, J. We are aware that twenty days is an exceedingly short statute of limitations. But it is important that improvements of this kind, once begun, should be completed as speedily as possible. To this end, it is necessary that all questions concerning the legality of the formation of the district and the validity of the assessment should be settled as soon as practicable. Such improvements, that require a majority in value of the property owners living in the district to set them in motion, are likely to be generally discussed, and therefore, it is not probable that people interested will be taken unawares. So, considering the nature of the improvement and the steps to be taken to initiate and complete it, we are not willing to say that twenty days is an unreasonable time. Judge Cooley, speaking of statutes of limitations, says: "It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes

of action; though what shall be considered a reasonable time must be settled by the judgment of the legislature, and the court will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice." Cooley, Const. Lim. 450.

Learned counsel for appellant contends that under the decision of this court in *Kansas City, P. & G. Ry. Co.* v. *Waterworks Imp. Dist.,* 68 Ark. 376, the right of way, roadbed, etc., of the railroad in this fencing district were subject to assessment, and that *Little Rock & F. S. Ry. Co.* v. *Huggins,* 64 Ark. 432, if in conflict with this, is overruled by it, and that the case in 68 Ark., *supra,* should prevail. But there is no conflict in the principle decided in the two cases, even if there be apparent conflict in the reasoning of the opinions. The Huggins case, 64 Ark., was a fencing district case, and we held that the right of way, roadbed, etc., of railroads were not intended to be included in fencing districts for purposes of the assessment. We think this is obvious from the manifest purpose of the legislature in providing for such districts. The design of the legislature was to benefit people engaged in the pursuit of agriculture or kindred avocations—at least, a rural population.

But local improvement district in cities and towns are quite different. The case of *Kansas City, P. & G. Ry. Co.* v. *Waterworks Imp. Dist.,* 68 Ark. 376, was that kind of a case.

We do not think that coal mines should be included in fencing districts, any more than railroads, for the purposes of assessment. But, if the lands containing coal are also useful for agricultural and kindred purposes, they may be included. There was some proof that apepllant's land would have a value for such purposes after the coal was exhausted. That appellant's assessment for this improvement is excessive, we have not the slightest doubt. But this could and should have been corrected within the twenty days.

We do not see how we can relieve him in this proceeding. In fact, he is not asking for a reduction of the assessment, but to be relieved entirely.

We adhere to an affirmance of the judgment.