ALEXANDER v. BOARD OF DIRECTORS OF CRAWFORD COUNTY
LEVEE DISTRICT.

Opinion delivered January 23, 1911.

1.  IMPROVEMENT DISTRICTS—IMPROVEMENT OUTSIDE OF CITIES AND TOWNS.—
    There is no constitutional requirement that the creation of local im-
    provement districts outside of cities and towns shall be based upon
    the consent of a majority in value of the property owners. (Page
    328.)

2.  LEVEE DISTRICT—CONSENT OF PROPERTY OWNERS.—The act of March 15,
    1909, providing for the organization of the "Crawford County Levee
    District," is not invalid for failure to provide for obtaining the con-
    sent of the property owners within the district. (Page 328.)

3.  SAME—TAXATION OF PROPERTY BENEFITED.—The act of April 23,
    1909, amending the original act of March 15, 1909, creating the Craw-
    ford County Levee District, is void for providing that assessments
    of property therein shall be based upon the valuation thereof plus
    the benefits to be derived from the improvement. (Page 330.)

4.  CONSTITUTIONAL LAW—EFFECT OF UNCONSTITUTIONAL ACT.—An uncon-
    stitutional act will not repeal a prior valid act in conflict with it.
    (Page 333.)

5.  LEVEES—EFFECT OF LEGISLATURE OMITTING PROPERTY.—A statute creating
    a levee district which omits to authorize the assessment of railroad
    property within the district may be upheld on the assumption of a
    legislative determination that the property will not be benefited by
    the levee. (Page 333.)

6.  SAME—ASSESSMENT OF RAILROAD PROPERTY.—Railroad property lying
    within a levee district is assessable for the benefit which it will de-
    rive from such levee. (Page 333.)

Appeal from Crawford Chancery Court; *Charles E. Warner,*
Special Chancellor; reversed.

*Hill, Brizzolara & Fitzhhugh* and *Jesse Turner,* for ap-
pellants.

1.  The rule of apportionment declared in the amendatory
act of April 23, 1909, is unconstitutional.

(*a*)  The power of levying local assessments for local im-
provements is a branch of the taxing power—and of the taxing
power only.  It finds its only justification in the theory that it
is an exaction upon the property owner in return for special
benefits, which the property owner receives by reason of the
public improvement for the cost of which the assessment is made.
The exaction must be in substantial proportion to said special
benefits, and in no case in excess thereof.  Page & Jones on

Taxation by Assessment, § § 8, 11, 87, 89, 92, 99, 100, 147, 665, 653, 666, 678, 690, 691; 86 Ark. 1; 64 Ark. 258; Cooley on Taxation, 661-2-3; 172 U. S. 269; 65 Pa. St. 146, 3 Am. St. Rep. 63; 57 Miss. 378, 34 Am. Rep. 451; 90 Am. Dec. 634; 18 Am. Rep. 729; 69 Pa. St. 352, 8 Am. Rep. 255; 35 Mich. 155: 44 Vt. 174; 51 N. E. 204; 57 N. E. 374; 67 N. E. 359; 48 Ark. 370; 52 Ark. 167; 64 Ark. 555; 68 Ark. 375; 69 Ark. 68; 71 Ark. 17.

(b) The legislative determination of the rule of apportionment on the property assessed, whether the rule be according to the actual value or according to the assessed value, for purposes of general taxation, or according to front footage, or according to area, is entitled to great weight, and will ordinarily be held as *prima facie* correct; but such presumption is not conclusive. If, therefore, a statute provides a rule of apportionment of taxes for local improvements which, in its practical operation, produces, in the case of any particular land owner, a burden which is not in substantial proportion to the special benefits conferred, or which is in excess thereof, it is, as to such a case, *pro tanto* invalid; and if a statute on its face provides a rule of apportionment which neither expressly declares that the tax shall be in substantial proportion to said special benefits (and in no case in 'substantial excess thereof), nor renders it reasonably probable that, in its practical operation, it will produce an apportionment in substantial proportion to said special benefits (and in no case in substantial excess thereof), such statute is, *per se,* unconstitutional and void. Page & Jones, Taxation by Assessment, § § 34, 86, 691, 698; 57 Miss. 378, 34 Am. Rep. 651; 69 Pa. St. 352; 51 N. E. 204; 57 N. E. 379; 67 N. E. 359; 181 U. S. 324; 205 U. S. 138; 21 Ark. 46; *Id.* 60; 48 Ark. 370; 59 Ark. 513; 72 Ark. 119; 83 Ark. 54; 77 Ark. 283; 78 Ark. 581; 81 Ark. 563.

(c) The statute of April 23, 1909, neither expressly declares that the tax shall be substantially in proportion to special benefits (and in no case in substantial excess thereof), nor does it by its terms render it reasonably probable that in its practical results it will produce an apportionment in substantial proportion to said special benefits, and, in no case, in substantial excess thereof. The statute is therefore unconstitutional and void. Acts 1909, pp. 472 *et seq.*, § 1; 2 Dillon, Municipal Cor-

porations, § 809; Cooley on Taxation, 661-2-3; 35 Mich. 155, 24 Am. Rep. 535.

2. The original act of March 15, 1909, and also the amendatory act of April 23, 1909, are unconstitutional in that they exclude from assessment all that portion of the right-of-way and line of track of the St. Louis, Iron Mountain & Southern Railway, which is situate in said appellee levee district.

(*a*) The legislative will can be gathered only from the acts as interpreted in the light of existing law, and from this language so interpreted, it appears that it was the legislative purpose to exclude said railway right-of-way and line of track from assessment in the district. Acts 1909, p. 159 *et seq.*, § § 1, 4, 6 (original act) ; Acts 1909, p. 472 *et seq.;* 64 Ark. 432. Compare Acts 1909, p. 109; *Id.,* p. 204; *Id.,* p. 274, § 5; *Id.,* p. 671; *Id.* 335.

(*b*) The effect of this legislative determination to exclude the railway right-of-way and line of track from the assessment is, unquestionably, to render the statutes discriminatory and unconstitutional.    52 Ark. 167; 64 Ark. 555; *Id.* 432; 69 Ark. 68, 78; 71 Ark. 17; 86 Ark. 1; Styles 12 (23 Car. 1) ; 48 Ark. 370; *Id* 252; Page & Jones, Taxation by Assessment, § § 639-40; 197 U. S. 432; 68 Ark. 376; 84 Ark. 391; art. 19, § 27, Const. 1874.

*Sam R. Chew* and *Jesse Turner,* for appellants.

It is not within the legislative competency in this State for the General Assembly to create a local subdivision smaller than any political division, with no power of self-defense, either by direct action or through representation, and "endow it with no capacity whatever except to be the bearer of a burden imposed on it without its consent," on the pretext that the landowners in such subdivision will be compensated for bearing these enforced burdens by more or less elusive benefits arbitrarily alleged to be expected to flow from the local works to be erected under the legislative fiat.    24 Mich. 44, 9 Am. Rep. 103; 67 Ark. 30; Cooley on Taxation, 688; 28 Mich. 228; 71 Ark. 556; 84 Ark. 390; Cooley on Taxation (last ed.), 1305-6, 1311, 1312, 1319, 1320-22; Cooley, Constitutional Limitations (3 ed.), 576 and cases cited; 37 N. J. 415, 18 Am. Rep. 730; 9 Dana (Ky.) 513, 35 Am. Dec. 159; 57 Miss. 378, 34 Am. Rep. 451; 83 N. W. 130; 43 N. E. 587; 43 Ind. 83; 39 La. Ann. 391; 29 Wis. 400 and 664;

27 Wis. 147; 2 Kan. 115; 51 Ill. 17; *Id.* 37; *Id.* 130; 53 Ill. 302; 55 Ill. 133; 74 Ill. 406; 107 Ill. 372; 81 Ill. 49; 3 Heisk. 682; Cooley on Taxation, 1310, note; 67 Ark. 30; 9 Heisk. 349; 24 Am. Rep. 308, 319; Jones & Page, Taxation by Assessment, § 251.

The Carson case, 59 Ark. 513, did not decide the question here presented, because this question was not in that case. Neither do the cases relied on by appellees, 69 Ark. 284, 79 Ark. 228 and 78 Ark. 118, determine this question adversely to appellants. See also as tending to support appellants' contention: 67 Ark. 30; 71 Ark. 556; 84 Ark. 390; 13 Ark. 752; 12 Ark. 101; 42 Ark. 77; art. 2, § 29, Const. 1874; 3 Dallas 386; 39 Ark. 355; art. 2, § § 1, 2 and 7, art. 3, § 1, art. 4, § § 2, 3, 4, art. 5, § 25, art. 7, § § 28, 30, 38, 39, 41, 46, 47 and 50, art. 8, § 1, art. 13, art. 14, § 3, art. 16, § § 1, 9, 10 and 13, art. 19, § 4, Const. 1874.

*E. L. Matlock* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1.   That the Legislature has power to create a levee district and authorize its commissioners to issue bonds without the consent of inhabitants or property owners residing within its limits has been settled by repeated decisions of this court. 69 Ark. 284; 83 Ark. 54; 79 Ark. 239; 78 Ark. 118; 80 Ark. 324.

2.   The assessment for local improvements may be either upon the value of the land or upon an assessment of the benefits. 77 Ark. 384; 81 Ark. 562. The method of assessment provided by the act in this case, while, like all other methods of levying taxes, it will probably work a hardship in some cases, is, nevertheless, probably as just as any that can be devised. And it is not new in this State. Kirby's Dig., § § 4939, 4942, 4948; 80 Ark. 466. See also 181 U. S. 325; *Id.* 389; *Id.* 396; *Id.* 399; *Id.* 394; 187 U. S. 544; 197 U. S. 434. This court has held that art. 6, § 5, Const. 1874, which requires assessments to be equal and *ad valorem,* has no application to assessments for local improvements. 24 Ark. 40; 87 Ark. 9.

3.   If the amendatory act should be stricken out as unconstitutional, the only effect will be to reinstate the original act. 85 Ark. 346; 86 Ark. 343; 90 N. W. 283; 121 Ind. 514; 16 Am. St. Rep. 411. The original act is not void because, as contended by appellants, no provision is made for the assessment of rail-

roads. The statute provides for the assessment of all the real estate within the district, and the track and right-of-way of a railroad are real estate assessable for local improvements that benefit it. 72 Ark. 125; 68 Ark. 376; 81 Ark. 567.

4. Even if individual assessments should be held to be unconstitutional as taking property without benefit, that would not justify the court in enjoining the work or the issue of bonds by the district. 83 Ark. 54.

McCULLOCH, C. J. This action involves an attack by landowners on the validity of an act and an amendatory act of the General Assembly of 1909, creating Levee District No. 1 of Crawford County, Arkansas, the name and style of the organization being stated in the act as "Board of Directors of the Crawford County Levee District." The original act, approved March 15, 1909, contains the following section relating to assessments to defray the cost of building and maintaining the levee:

"That for the purpose of building, repairing and maintaining the levee aforesaid, and for the purpose of paying such sums as may be necessary for the condemnation of property as hereinbefore provided, and for carrying into effect the objects and purposes of this act, the Board of Directors of Crawford County Levee District shall have power, and it is hereby made their duty, to assess and levy, annually, a tax upon the valuation as it shall appear each year upon the real estate assessment book of Crawford County, Arkansas, upon all lands and real estate within said district; provided, further, that no error in the names of (or) residence of the owner of the land or real estate, or the description thereof, shall invalidate said assessment or levy of taxes, if a sufficient description is given to ascertain where the lands or real estate is situated. Whenever the board of directors may deem it advisable, they may employ one or more competent surveyors whose duty it shall be to survey any or all of the lands of the district, as they may be directed by the board, for the purpose of ascertaining the lands subject to taxation hereunder." (Sec. 4, p. 163, Acts of 1909).

The act approved April 23, 1909, amended section 4 of the original act as follows:

"That for the purpose of building, acquiring, repairing and maintaining the levee aforesaid and for the purpose of paying such sums as may be necessary for the condemnation of property as hereinbefore and hereinafter provided, and for carrying into effect the objects and purposes of this act, the Board of Directors of the Crawford County Levee District shall have power, and it is hereby made their duty, to assess and levy annually a tax upon the valuation of the real estate, including the increased value or betterments estimated to accrue from protection given against floods from the Arkansas River by said levee; and upon all lands and real estate within said levee district as the same shall be assessed by a board of assessors as is hereinafter provided, * * * and such board of assessors shall make an assessment of all the lands in said district in a book or books provided by the board for that purpose. The said lands shall be entered upon said book or books in convenient subdivisions, as surveyed by the United States Government, in appropriate columns showing the names of the owners of said lands, a description of said lands, showing the number of acres in cultivation and in woods as nearly as said assessors can ascertain without measurement, the value thereof as estimated increased by levee protection. * * * The assessors shall make their assessment at such times as they may be directed to do so by the board of directors and shall place in the hands of the president of the board of directors their report of said assessment; thereupon the president of the board of directors shall cause a notice to be published, * * * calling on the landowners aggrieved by reason of the assessment to appear on the day therein named before the board of assessors at a place of meeting to be named in said notice, for the purpose of having any wrongful or erroneous assessments corrected; that, after said notice shall have been given, the assessors shall meet at the place named in said notice on the day mentioned therein, and shall hear any complaint of landowners and persons interested and adjust any errors or wrongful assessments, and their assessments as adjusted shall be the assessment of said levee district until the next assessment shall be ordered by the board of directors."

The chancellor sustained a demurrer to the complaint, and

the plaintiffs, after declining to amend and suffering a decree to be entered dismissing the complaint for want of equity, appealed to this court.

The whole statute, as originally enacted and as amended, is assailed on the ground that the Legislature exceeded its powers in attempting to create by direct legislation a district for local improvements outside of a city or town, to be paid for out of special assessments, without providing some method of obtaining the consent of the property owners within the district to be affected. That question has never been expressly decided by this court.

*Craig* v. *Russellville Waterworks Improvement Dist.*, 84 Ark. 390, involved that question as to improvement districts in cities and towns, and the court held that such a statute was void by reason of its failure to provide for obtaining the consent of the property owners. The court based its conclusion entirely on the provision of the Constitution relating to improvement districts in cities and towns. The court, in disposing of that case, said: "It (the constitutional provision referred to) created a vested property right in owners of real estate in cities and towns. It is a guaranty to them that their property shall not be taxed for local improvements except upon an *ad valorem* basis, and upon the consent of a majority in value of those to be affected by such improvement. Having this constitutional guaranty that their property shall not be subject to assessment except in this manner, then, until it is assessed in this manner, they have a right to object to any taxation upon it for the purpose of local improvements. * * * It is not the province of the Legislature to determine whether such consent has been obtained as a basis for the improvement. Its province is to create a procedure for obtaining such consent and a forum to determine whether such consent is obtained."

The Constitution is silent as to improvement districts outside of cities and towns, and of this the court in the Craig case, *supra,* spoke as follows: "This restriction only reaches to local improvements in cities and towns, and leaves the General Assembly free to exercise its sovereign will in this respect elsewhere in the State. The power to create districts for local improvements and to provide a method for taxation therein, and the

breadth of that power, and the narrow scope of judicial inquiry into it, have been considered by this court in recent cases."

This, of course, must be treated as *dictum*, so far as it attempted to decide the question now before us, though it was pertinent in the discussion of the questions then before the court. Undoubtedly this court has, in many cases, treated the question as settled that the Legislature may create improvement districts outside of cities and towns without providing for obtaining the consent of the property owners. *Altheimer* v. *Plum Bayou Levee Dist.*, 79 Ark. 229; *St. Louis S. W. Ry. Co.* v. *Red River Dist.*, 81 Ark. 562; *Coffman* v. *Drainage Dist.*, 83 Ark. 54; *Sudberry* v. *Graves*, 88 Ark. 344.

The general statute of this State authorizing the formation of drainage districts by order of county courts contains no provision for ascertaining the will of the property owners, and does not make the authority of the county court depend on a petition signed by a majority of such owners; yet the court has repeatedly sustained assessments levied pursuant to the terms of this statute. *Cribbs* v. *Benedict*, 64 Ark. 555; *Brown* v. *Henderson*, 66 Ark. 302; *Driver* v. *Moore*, 81 Ark. 80; *Sudberry* v. *Graves, supra; Ritter* v. *Drainage Dist.*, 78 Ark. 581; *Chapman & Dewey Land Co.* v. *Wilson*, 91 Ark. 30.

An examination of the opinions in those cases will disclose the fact that almost every conceivable objection was raised as to the validity of the statute and proceedings, but this point was never suggested nor expressly decided. It is true the power of the court in the drainage statute is made dependent upon a finding that the improvement will be conducive to the public health or welfare, or that it will be a public utility or benefit, and for this reason the power may be referable to the police power. But still the formation of the district is authorized without the consent of a majority of the property owners where the improvement will be of public benefit.

In *Sudberry* v. *Graves, supra,* we followed the Supreme Court of the United States, holding that it is within the power of the Legislature to ascertain directly the amount of benefits and to levy assessments without delegating the power to do those things to a subordinate agency. We conceive the question now before us to fall within that principle. There being no constitu-

tional hindrance, the Legislature may, in the exercise of the sovereign power, ascertain in its own way the will of the property owners to be affected by the local improvement, and create the district and levy assessments for the construction of an improvement. This falls within the legislative power to legislate for the benefit of the whole State or for the special benefit of any given locality thereof.

We find many expressions in the authorities, so ably and interestingly discussed by counsel for defendants, which sustain their contention that assessments for local improvements must be based on the consent of a majority of those who are to be taxed, but on a careful consideration we are of the opinion that the views we have announced are sound and are in accord with our previous decisions.

The validity of the amendatory act of April 23, 1909, is challenged on the ground that it authorizes assessments based on valuation as increased by the improvement. The act clearly states that the assessment shall be levied on "the valuation of the real estate, including the increased value or betterments estimated to accrue from protection given against floods." The assessors are authorized to ascertain the value of said lands "as estimated increased by levee protection," and "the assessments as adjusted shall be the assessment of said levee district until the next assessment shall be ordered by the board of directors." It is, we think, well settled by authority that assessments for local improvements must be based on special benefits to accrue therefrom, and must be laid in substantial proportion to such benefits and not in excess thereof. This principle is nowhere better expressed than by Special Justice COCKRILL in delivering the opinion of the court in *Kirst* v. *Street Imp. Dist.*, 86 Ark. 1, as follows:

"Special assessments for local improvements find their only justification in the peculiar and special benefits which such improvements bestow upon the particular property assessed. Any exaction in excess of the special benefit is, to the extent of such excess, a taking of property without compensation. Notwithstanding those principles so firmly settled, and in spite of *Norwood* v. *Baker* 172 U. S. 270, it has been repeatedly held by the Supreme Court of the United States and this court that an act of the Legislature providing for the assessment of the cost of

a local improvement according to the value of the property itself is not arbitrary, and is not in conflict with the Federal Constitution. These decisions are based on the principle that it must be assumed that the Legislature, in adopting such a method, has determined that the amount of benefits will accrue in proportion to the value of the property itself, and thus the assessment is still according to benefits, within the meaning of the law."

Judge RIDDICK, speaking for the majority of the court in *Ahern* v. *Bd. Imp. Dist,* 69 Ark. 68, said: "It has often been decided that the only sound principle upon which assessments for local improvements can stand is that the property assessed is specially and peculiarly benefited by the improvement. If this be the basis upon which such assessments rest, then the most equitable method of apportioning the burden among the property holders of the district is by assessment in proportion to benefits."

The opinions in many other cases express the same idea. It has also been held in many of the cases that local assessments may be based on valuation of the property to be benefited, but it is always explained that this is on the theory that the Legislature has determined that the benefits will accrue in proportion to the value of the land, and that the courts should respect that determination. Judge RIDDICK explained that in the Ahern case *supra,* and in the case of *St. Louis S. W. Ry. Co.* v. *Board of Directors,* 81 Ark. 567, we said: "The fact that the assessment is made upon the whole value of the property does not imply that it is not also according to the benefits to accrue from the improvement, for it is not an arbitrary or unreasonable method of ascertaining the amount of the benefits to assume that they will accrue in proportion to the actual value of the whole property. The Legislature acted upon this assumption in providing that the assessments should be fixed according to value, and we can not say that it is arbitrary or unreasonable."

We have never held, nor are we aware that any other court has ever held, that assessments of local improvements may be assessed according to value as such, but such assessments are always sustained distinctly upon the assumption that the benefits will accrue in proportion to such value, and that after all this is only a method of assessing the benefits. Our general statute as to local improvements in cities and towns, as originally enacted,

provided for assessments according to valuation fixed from year to year for county taxation. The valuation so fixed of course included the increase from year to year. Nevertheless, the assumption is that the benefits will continue to increase from year to year in the same proportion, and that is the theory upon which the assessments were sustained.

But here we have a statute which authorizes assessments on valuation *and* benefits. It would be a contradiction of terms to say that this was intended as an assessment of benefits on the assumption that the benefits will accrue in proportion to the value of the land, for, if that be true, why include the estimated benefits in the assessment of values? This method of assessment necessarily excludes the idea that the assessment of valuation was intended as a method of assessing the benefits.

The injustice of this method of assessment was very aptly illustrated in the argument of counsel for defendant. Let us suppose the original value of one tract of land in the district to be $50 per acre, and the estimated benefits to be $5 per acre, making the total increased value by reason of the improvement $55 per acre. Another tract may be valued at $5 per acre, and the estimated benefit $50 per acre, making the increased valuation $55 per acre, the same as the other tract. Now, under this method both tracts are taxed precisely the same amount, whereas one has received ten-fold the benefits that the other has received. Is this in accord with the rule fixed by all courts that the assessments must be in proportion to benefits? A method of assessment which could result in this way was expressly condemned by this court in *Kirst* v. *Imp. Dist., supra,* as violative of the uniformity clause of the Constitution.

It is earnestly insisted that the language of this statute is substantially the same as that used by the general statute authorizing the formation of levee districts by order of the county court, and that that statute passed in review before this court in *Overstreet* v. *Levee District,* 80 Ark. 462, without condemnation. In that case the method of assessment was not called to our attention, and no objection was made to it on the ground that the statute provided an improper basis of assessment. The question now before us was not raised, and that case can not be treated as a precedent. Besides, the language of the statute

involved in the Overstreet case is not precisely the same as the language of the statute we are now reviewing, and we are not called upon to determine whether an assessment made pursuant to that statute would be valid.

We are therefore of the opinion that the amendatory act is void. It does not necessarily follow, however, that the district is without power to proceed to perform its functions and to levy assessments. The original act contains complete authority, and is not repealed by the void amendatory act. *Union Sawmill Co.* v. *Felsenthal,* 85 Ark. 346; *Beasley* v. *Gravette,* 86 Ark. 345.

The original act is assailed on the alleged ground that it omits assessments of railroad property, and is void because such omission destroys the equality and uniformity of the taxation. The statute might be sustained, if held not to authorize assessments of railroads, on the assumption of a legislative determination that the railroad in the district will not be benefited, and that it was included in the district out of considerations of convenience. *Stiewel* v. *Fencing Dist.,* 71 Ark. 17. But we are clearly of the opinion that the railroad in this district is subject to assessment. This is settled by the decision of this court in *Kansas City, P. & G. Ry. Co.* v. *Imp. Dist.,* 68 Ark. 376. The assessment of railroad property is certified down to the county assessor, and by him listed on the county assessment books like other real property. The board of directors of the levee district are impowered to ascertain the extent of the railroad property in the district and to cause it to be extended for special taxation in accordance with the assessment for county purposes. This accomplishes the will of the lawmakers in determining that the railroad property, like other real property, will receive benefits in proportion to its assessed valuation.

It follows from what we have said that the court erred, and the decree is reversed with directions to overrule the demurrer to the complaint, so far as it seeks to prevent the enforcement of assessments under the amendatory act of April 23, 1909, but to sustain the demurrer in so far as an attack is made upon the right to levy assessments under the original act of March 15, 1909, and to make sale of bonds authorized by the statute.