BOARD OF DIRECTORS, ST. FRANCIS LEVEE DISTRICT *v.* SIMON.

4-7195                                    177 S. W. 2d 185

Opinion delivered January 10, 1944.

*Burk Mann* and *Coleman, Mann, McCulloch & Goodwin,* for appellant.

*C. M. Buck,* for appellee.

SMITH, J. Appellees are the owners of numerous lots in the city of Blytheville, and they seek, by this suit, to enjoin the collection of the levee taxes assessed against their property for the year 1935. There is no explanation of the delay of this suit in reaching this court.

The points in issue will be better understood if viewed in light of the conditions under which the assessments were made. We, therefore, review them.

The railroad companies owning lines lying in part within the boundaries of the St. Francis Levee District brought suit in the Federal Court for the Eastern District of this state to enjoin the collection of the betterment assessments imposed upon their property. They alleged their assessments were arbitrary and excessive. Their rights-of-way had been assessed upon a mileage basis, while other lands in the district were assessed upon an acreage basis, and it was contended this was highly discriminatory against their property. The relief prayed was granted. *St. Louis-S. F. Ry. Co.* v. *Board of Directors, et al.,* 2 Fed. Supp. 38. In the opinion in that case, delivered by Judge MARTINEAU, December 29, 1932, he said that the railroads were paying approximately one-fifth of the taxes collected by the district, but only owned one four hundredth part of the property in the district.

An appeal was prosecuted to the Court of Appeals, where the case was presented upon its merits, but the judgment of the District Court was reversed on the specific ground that the railroads had not exhausted the administrative remedy provided by the statutes pursuant to which the taxes had been imposed. In reaching that conclusion the Court of Appeals reviewed the statutes pursuant to which assessments had been made, the last step in that behalf being the action of the board of assessors, as an equalization board, whose action constitutes the final assessment of all property in the levee district subject to the levee tax.

Of this board and its functions the Court of Appeals said: "This board of assessors and equalizers lowers assessments that are too high and raises those which are too low." We think this statement manifests a correct apprehension of the powers and duties of this equalization board, as defined in the various acts of the General Assembly relating to the St. Francis Levee District. We think also that this statement presents the core of this litigation and is decisive of it. *Board of Directors, St. Francis Levee District* v. *St. Louis-San Francisco Ry. Co.,* 74 Fed. 2d 183.

Undeterred by this failure to secure the relief to which the railroads thought they were entitled, they proceeded to attack the assessments of benefits against their property, for the next ensuing year, and as a means to that end they obtained from the Federal District Court an order of preliminary injunction enjoining the board of directors from the collection of the levee tax and ordering the board to submit its levee tax claim to the bankruptcy court administering the railroad companies. There were two appeals from this order, the first being decided in the case of *Board of Directors of St. Francis Levee Dist.* v. *Kurn,* 91 Fed. 2d 118, and the second appeal in the case of *Board of Directors of St. Francis Levee Dist.* v. *Kurn,* 98 Fed. 2d 394. As a result of the opinions in those two cases the injunction was not dissolved, and an appeal from those orders was denied by the Supreme Court of the United State, 302 U. S. 750, 58 S. Ct. 272, 82 L. Ed. 580.

In this state of the case a new and complete assessment of all property in the levee district subject to the levee taxes was ordered for the year 1935, to be made by the assessors for the various counties in the levee district. There is an assessor for each county, and § 4, act 34, Special Acts 1923, p. 55, provides that each of these assessors for his own county shall, independently of the action of the assessors for the other counties, proceed to assess the property in his county; but this assessment is temporary and provisional. It is not final.

Pursuant to the directions of this section the various assessors proceeded to assess the property in their respective counties, and they each performed their duty by adopting the assessment upon which taxes had been collected for the years 1931, 1932, 1933 and 1934. They made no changes.

Now, every property owner in the district was charged with knowledge of the fact that this assessment was not final, because the law specifically provides that it shall not be. Each assessor acted independently of all the other assessors. No provision is made for a hearing before any county assessor, because his assessment is tentative and provisional and must be reviewed and approved by the board of assessors acting as an equalization board before becoming final.

Section 2 of act 61 of the Acts of 1903, p. 103, provides that: ''After each of them (county assessors) has made the assessment they shall forward a report to the president of the board, and may indicate to him the day upon which they desire to meet for the purpose of equalizing said assessment.'' It is further provided in § 2 of this act 61, *supra,* that: ''Thereupon the president of the board shall cause a notice to be published in each county, calling on all the land, railroad and tramroad owners or persons aggrieved by reason of the assessment to appear on the day named before the board of assessors, for the purpose of having any wrongful or erroneous assessment corrected. That after said notice shall have been given the assessors shall meet at the office or place of business of said board, on the day mentioned in said notice. They shall select a chairman and a secretary, and keep a record of their proceedings. They shall hear complaints of land, railroad and tramroad owners, and adjust any errors or wrongful assessments. They shall compare and equalize their assessments, and correct their books to conform to said equalization, and their assessments as equalized shall be the assessment of said levee district until the next assessment shall be ordered by the board of directors.''

It is not questioned, indeed, it is stipulated, that there was an exact and literal compliance with the provisions of the statutes just quoted.

In granting the complaining property owners the relief prayed by them, from which action is this appeal by the levee district, the court passed upon only one contention made by them, this being that their assessments as fixed by the county assessor of Mississippi county, in which county the city of Blytheville is located, had been increased by the board of equalization, of which action they had no notice.

Their argument is that they were under no obligation to appear before the board of equalization for the reason that they were satisfied with the assessment of betterments against their property as made by the assessor for Mississippi county and they were not advised that any change would be made in their assessments. But they were advised, both by the law and the published notice of the proposed meeting of the board of equalization, that such changes might be made and would be made if that action was required to equalize the assessments of all the property in the district. They were advised, as was said by the Court of Appeals in the case of *Board of Directors of St. Francis Levee Dist.* v. *St. Louis- S. F. Ry. Co., et al.,* 74 Fed. 2d 183, that assessments which were too low would be raised and those which were too high would be lowered.

None of the property owners here complaining attended this meeting of the board of equalization, which the published notice advised would be held. They were satisfied with their assessments made by the county assessor for Mississippi county, but they made no inquiry as to whether those assessments would be changed by raising some and lowering others, as might be found necessary to equalize all the assessments. Had they made this inquiry, they would have been entitled to, and would have, no doubt, received, an answer. Had they made any inquiry, they would have discovered that the railroad companies were complaining, especially of the inequality of their assessments, as compared with the assessments

of town lots throughout the district, and such inquiry would have led to the knowledge that relief could be granted the railroad companies, only by doing one or both of two things: (1) the reduction of assessments of the railroad companies, or (2) the increase of the assessments of the town lots. As a matter of fact, the board of equalization did both.

This action of the board of equalization was not perfunctory. On the contrary, the most painstaking and intelligent consideration was given to the duties they were called on to perform, and they finally submitted to the board of directors of the levee district the report upon which the assessments here complained of were made, as the law required. This report is very illuminating and would be copied in full in this opinion for its historic value, if its length did not forbid it.

The report reflects the consideration of every fact and circumstance which should have been taken into account in determining the betterments to be assessed against all the property in the district subject to the taxes resulting from the construction and maintenance of the levee and the protection of this property from the annual floods to which the property would be subject without levee protection.

The report of this board reflects that it commenced the consideration of its duties on August 20, 1935, and that much testimony was heard, and hearing was accorded to all persons who desired to be heard. This hearing continued until August 23, at which time the board adjourned to hear arguments for the protestants and for the district, and for other purposes, after which the board adjourned until September 4, when a written report, containing many pages, was filed with the board of directors of the levee district. This report reflects the manner in which town lots, both vacant and improved, were assessed, and indicates that their assessed values for general taxation were taken into account in determining the benefits to be assessed against the respective lots.

We conclude, therefore, that the court was in error in holding that the assessments here complained of were made and changed without notice. These property owners had the notice for which the law provides, which notice, if pursued with any diligence, would have advised them that changes in the assessments might be made and would be made if that action became necessary to equalize the assessments.

It is insisted that the decree from which is this appeal should be affirmed, even though we should find and hold that the assessments were not made without notice, for the reason that the assessments are arbitrary and discriminatory and that, in no event, should town and city lots be assessed at a greater amount than 25c per acre. These are questions not passed upon by the court below, but if appellees are correct in these contentions the decree should, nevertheless, be affirmed for these reasons, although not passed upon by the court below.

Appellees construe § 4, act 34, Special Acts of 1923, p. 31, from which section we have already quoted, as limiting the annual assessment upon all lands and town lots to 25c per acre. We think, when § 4 is read in its entirety, it will not be found to impose this limitation. The act provides for an assessment of the betterments. "upon all lands, town lots, blocks, railroads and tramroads, telegraph and telephone lines, within said levee district, but that said levy and assessment shall not exceed eight per centum of the betterment, nor 25c per acre, and all town lots and parts of lots and blocks in said district shall be assessed according to the betterments and increase in value thereof." We think there is no ambiguity in this language, and we construe it to mean that the railroads and other utilities, first named, should have a tax levied against the increased value of such properties, upon which a tax not exceeding eight per cent. of the betterments should be levied, and that lands, which we construe to mean acreage property, should be similarly assessed, with the proviso that the tax should not exceed 25c per acre, and after so pro-

viding it was further provided that "all town lots and parts of lots and blocks in said district shall be assessed according to the betterments and increase in value thereof." Few, if any, town lots contain as much as a single acre, and the limitation of 25c per acre does not apply to them. By express provisions town lots and blocks are assessed as such, and not on the basis of acreage. If this limitation of 25c per acre applied to town lots it would be equally applicable to the rights-of-way of railroad companies and other utilities, and such a tax would be so grotesquely low as to be absurd, and would not at all reflect the benefits derived from flood protection by railroads, which could not operate without levee protection during the high stages of the river.

It is pointed out that the revised assessments of the lots has greatly increased the tax on such property, in some instances as much as 1,000 per cent., and this is said to have been an arbitrary action. The most extreme increase of taxes pointed out is that of two lots on which the taxes have been increased from $10 to $138, or from $5 per lot to $69. These are lots which are assessed for general taxation at $30,000, this on a basis of 50 per cent. of value. It is said in appellee's brief that most blocks in Blytheville have an area of less than two acres, and are divided into 12 lots. If this property were assessed for levee purposes on an acreage basis, the tax on the blocks of which the lots are a part would not exceed 50c, and the proportionate part of the tax against the two lots in question would be not quite 5c per lot. This assessment would be as inadequate as would be an assessment of railroad rights-of-way on an acreage basis.

There are in the St. Francis Levee District 47 cities, towns and villages, whose area is divided into lots and blocks and assessed as such. Sixteen of these are in Mississippi county and 14 in the adjoining county of Crittenden, these being the only two counties in the levee district entirely within the district, only portions of other counties being included.

It is not contended that there was any discrimination in favor of any of the other cities, towns or villages in

the levee district, as against the city of Blytheville. On the contrary, the record shows they were all assessed on the same basis.

The record also shows that in 1890 there was no Blytheville, and that when the first census was taken after the passage, in 1893, of the act creating the St. Francis Levee District, a town called Blytheville had been established, and had a population of 302. It has since grown until today it is the queen city of the St. Francis Basin, with a population of over 10,000, and the county in which it is located has become the leading cotton producing county in all the United States. During that same period of time the prosperous city of Earle grew from a wide place on an unimproved road, having only one store, in which was located a post office, which gave the community its name, with a de-wheeled box car as a depot, but without a station agent. So, also, with the city of West Memphis. Anyone who has crossed the Mississippi River at that place would know that the thriving city which nestles behind the St. Francis Levee would be swept away by the floods of the river if levee protection were not afforded.

There is nothing in the record before us to indicate that all the cities, towns and villages have not received a protection and benefit worth many times its cost. It was admitted in the testimony of protestants here that the city of Blytheville would never have been built without levee protection; but it was contended also that drainage was essential and that separate taxes were imposed to secure that benefit. Nevertheless, it was conceded that levee protection was the first essential to the development of that area.

It is argued that taxes were assessed against the value of the lots independent of levee protection and also against the enhanced value of the property or the benefits thereto, and the case of *Alexander* v. *Board of Directors,* 97 Ark. 322, 134 S. W. 618, is cited as holding that such an assessment is void. The record does not sustain this contention as applied to the assessment of lots here in question.

The statute held void in the Alexander case, *supra,* was one which authorized assessments against both values and benefits, and the opinion points out that improvement district taxes could be imposed only against benefits resulting from the construction of the proposed improvement. But the opinion did not hold that values might not be considered, but must be disregarded, in determining benefits. The holding was specifically to the contrary. Chief Justice McCulloch, for the court, there said: "It has also been held in many of the cases that local assessments may be based on valuation of the property to be benefitted, but it is always explained that this is on the theory that the Legislature has determined that the benefits will accrue in proportion to the value of the land, and that the courts should respect that determination. Judge Riddick explained that in the Ahern case, *suppra* (69 Ark. 68, 61 S. W. 575), and in the case of *St. Louis S. W. Ry. Co.* v. *Board of Directors,* 81 Ark. 562, 99 S. W. 843, we said: "The fact that the assessment is made upon the whole value of the property does not imply that it is not also according to the benefits to accrue from the improvement, for it is not an arbitrary or unreasonable method of ascertaining the amount of the benefits to assume that they will accrue in proportion to the actual value of the whole property. The Legislature acted upon this assumption in providing that the assessments should be fixed according to value, and we cannot say that it is arbitrary or unreasonable.'

"We have never held, nor are we aware that any other court has ever held, that assessments of local improvements may be assessed according to value as such, but such assessments are always sustained distinctly upon the assumption that the benefits will accrue in proportion to such value, and that after all this is only a method of assessing the benefits. Our general statute as to local improvements in cities and towns, as originally enacted, provided for assessments according to valuation fixed from year to year for county taxation. The valuation so fixed of course included the increase from year to year. Nevertheless, the assumption is that the

benefits will continue to increase from year to year in the same proportion, and that is the theory upon which the assessments were sustained.''

The record here shows that the board of equalization classified town lots into improved and unimproved lots, and found that the benefits to the lots in each case were in accordance with certain gradations of value. The opinion in the Alexander case, from which we have quoted, authorized this action.

We conclude, therefore, that the court was in error in holding these assessments invalid, and that decree will be reversed, and the cause remanded, with directions to dismiss the complaint as being without equity.

McFADDIN, J., concurs.