Chapman & Dewey Land Company *v.* Wilson.

Opinion delivered June 7, 1909.

1. Drains—validity of order establishing district.—An order establishing a drainage district is not invalid because the termini of the ditch were changed by the county court after the petition was filed. (Page 35.)

2. Same—confirmation of viewers' report—effect.—Upon the confirmation of the viewers' report by the county court. the termini and route of the ditch and the places where excavation is to be made and its extent, as well as the assessments of the benefits made against each tract, are conclusively fixed. (Page 36.)

3. Pleading—insufficiency of general denials.—Under the Code, every material allegation in the complaint, not specifically denied in the answer, will be taken as true; a general denial being insufficient. (Page 37.)

4. Drains—notice of letting contract.—Failure to give notice of the letting of a contract to build a public ditch is an irregularity which

does not affect the validity of the contract after the work has been completed thereunder.    (Page 37.)

5.    CONTRACT—ASSIGNMENT—RIGHT· TO SUE.—Where plaintiff was the surety of a construction company which- undertook to construct a public ditch, and, upon the failure of such company to perform the work, undertook and completed the work, and the contract and the certificates of indebtedness of the drainage district were verbally assigned to him, he was entitled to sue thereon.    (Page 37.)

6.    PARTIES—WAIVER OF DEFECT OF.—A defect of parties is waived by failure of the appellant to object thereto in the trial court.    (Page 38.)

7.    DRAINS—CONTRACT FOR CONSTRUCTION—TIME.—A contract for the construction of a public ditch is not void because the work was not completed within the time provided in the contract where neither the statute nor the contract stipulated that time should be of the essence of the contract.    (Page 39.)

8.    SAME—CONCLUSIVENESS OF FINDING OF OFFICIALS.—Where the law provided that certain officials should inspect the construction of a public ditch and determine whether same had been completed according to the contract, their decision thereon is binding unless it was obtained by fraud or such gross mistake as would necessarily imply fraud.    (Page 41.)

9.    SAME—RIGHT TO ENFORCE LIEN.—Under Acts 1899, p. 320, the holder of a lien for the construction of a public ditch is entitled to enforce his lien by suit against the land.    (Page 42.)

Appeal from Mississippi Chancery Court; *Edward D. Robertson,* Chancellor; affirmed with modification.

*W. J. Lamb, Ashley, Gilbert & Dunn* and *R. S. Rodgers,* for appellant.

1.    Time was of the essence of the contract, and the attempted extensions thereof were void.    Sandels & Hill's Dig., §§ 1215, 1218, 1219; 54 Cal. 54; *Id.* 570; 80 Cal. 5; 69 Cal. 454; 68 Cal. 428; 89 Cal. 316; 80 Mo. App. 574; 86 Mo. App. 349; 169 Mo. 376; 152 Mo. 585; 70 Mo. App. 535; 68 Mo. App. 352; 77 Mo. App. 616; 1 Y. & C. Ex. 401, 416; Pomeroy on Contracts, § 382; 81 Ark. 80.

2.    The county court acquired no jurisdiction to establish a drainage ditch with a terminus different from that described in the notice to property owners.    31 Mo. 273; 53 Ill. 97.    Although this court has held that the viewers might alter the terminus of the proposed ditch in their report (81 Ark. 80), it has not held that the county court has jurisdiction, after the terminus has been

fixed by the report and notice to owners given, to assess lands for a ditch with a different terminus, or that the contractor may change it. See also 64 Ark. 555.

3. The work was not performed substantially as ordered by the county court and required by the contract. The assessments were made to pay for a drain to be constructed to Tyronza River; also to pay for a drain in which openings were to be left not less than 10 feet in width, not exceeding 50 feet apart, all along said ditch on both sides, and so constructed that "no dirt, stumps or other obstruction shall be left within 8 feet of the slope stakes." No such drain was constructed. 138 Ind. 117; 103 N. W. (Ia.) 979 and cases cited; 31 Mo. App. 522; 200 Ill. 432; 14 Bush, (Ky.) 31.

4. This action was not maintainable in the name of appellee on certificates of acceptance issued to the General Dredging & Construction Company, contractor, and not assigned to Wilson. Sandels & Hill's Dig. § 1220. He was under no contract, and his liability as a bondsman was a separate and distinct matter. That he was on the bond gave no power to the county court to constitute him as a contractor without a reletting as required by statute.

5. No proper authority was shown in W. M. Kerr to issue the certificates. He was neither county surveyor nor one of the surveyors who assisted the viewers. Sandels & Hill's Dig. §§ 1220, 1229.

6. No proof of the giving of notice of the letting of the contract by the county clerk appears in the record. There is no presumption of law that notice was given, and the answer expressly denies it. The burden, therefore, was upon plaintiff to prove it. 11 Enc. of Ev. 877 and cases cited; Cooley on Taxation, 3d Ed., 1004; Black on Tax Titles § 444. The presumptions created by section 1232, Sand. & H. Dig., are in express terms confined to "proceedings occurring prior to the order of the county court establishing the ditch." See also 158 Ind. 525; 30 Mo. App. 380; 49 Mo. App. 117; 51 Ark. 447; 31 Mo. App. 520; 96 Mo. 507; 57 Neb. 78; 49 Neb. 883; 55 Neb. 57; *Id.* 735; 58 Neb. 839; 3 Wash. St. 84; 18 Wis. 92.

7. The decree is reversible because of fatal variances and discrepancies between the assessments and the certificates sued on.

*J. T. Coston,* for appellee.

1.   The first part of the answer simply denies that the plaintiff completed the shares or allotments "on or before the 2d day of January, 1905." The exact date of the completion was immaterial, and the denial is an admission that it was done at a subsequent date. 1 Enc. Pl. & Pr. 799. The remainder of the answer on this point is a mere negative pregnant, being an attempt to deny as a whole material facts alleged in the complaint, as conjunctively stated. *Id.* 797; 77 S. W. 906.

2.   Appellant will not be permitted to assume inconsistent positions. Having in the lower court distinctly recognized the engineer's certificates of acceptance as certificates issued to plaintiff showing that he did the work for which they were issued, appellant is estopped to insist here that they were not issued to Wilson but to the Construction Company. 93 S. W. (Ark.) 61; 95 S. W. (Ark.) 1012; 2 Cyc. 665, 666. The statement in the certificates that the General Dredging & Construction Company had completed the work was mere surplusage, not required or authorized by law. Appellee was not deprived of the right to enforce the lien of the assessment in a court of equity. Sand. & H. Dig., § 1220; 36 Ark. 504.

3.   The change by the viewers and court of the beginning point of the ditch was within the jurisdiction of the county court. *Driver* v. *Moore,* 98 S. W. (Ark.) 736; 70 S. W. (Ark.) 310; 64 Ark. 555.

4.   The county court's finding that the ditch benefits appellant's lands is conclusive.

5.   Failure to complete the work within the time specified in the contract did not render the contract void.

6.   If the clerk failed to advertise the letting of the contract, this was a mere irregularity which did not affect the validity of the contract. But the notice *was* given, and the allegation in the complaint that it was given was not specifically denied. The manner of denial raises no issue under the statute, but is a species of negative pregnant. 54 Ark. 528; 32 Ark. 105; 46 Ark. 136; 35 Ark. 561; 50 Ark. 564.

7.   The report of the viewers, and the contract based thereon, did not require any excavation of soil from Tyronza Bayou. The contractor was required only to construct the ditch in the "man-

ner set forth in the report of the viewers. Sand. & H. Dig., § 1218. And the report of the viewers shows that they complied literally with the statute. Sand. & H. Dig., § 1204, with reference to setting apart to each tract of land, etc., a share of the work in proportion to benefits. The engineer testifies that he found that the allotments had been completed according to the specifications *before* he issued the certificates. The assessments are therefore unquestionably due. Sand. & H. Dig., § 1220.

8. The contract, with the viewers' report made a part thereof, must be construed as a whole, and, so construed, openings every fifty feet on the side of the ditch were not necessary or required. Did the contractor complete, according to specifications, the particular job or allotment assigned or set apart to the particular tract of land in question? This is the sole question. Sand. & H. Dig., § 1220.

After the work has been completed, and the engineer representing the land owners has inspected and received it and issued his certificates, appellant cannot go behind it and urge as a defense slight variations from the specifications contained in the contract. 51 N. E. 936; 109 N. W. 68; 49 N. E. 833; 4 N. E. 317; 43 N. E. 230; 40 N. E. 702; 36 N. E. 547; 2 Cooley on Taxation, § 1280.

9. Appellant knew of and encouraged the construction of the ditch, had many interviews with appellee about the assessments, and made no complaint at any time on account of defective construction or non-compliance with the contract. Appellant is estopped. 15 N. E. 797; 124 Mich. 285; 31 Neb. 668; 94 N. W. 1076; 119 Ill. 504; 166 Ind. 343; 43 Ia. 343; 69 Mich. 484; 22 Neb. 437; 15 O. St. 64.

10. The drainage law, as amended in 1899, not only authorized but required appellee to bring suit in his own name for the collection of the assessments. Acts 1899, p. 321, 322.

FRAUENTHAL, J. The plaintiff, R. E. L. Wilson, instituted this suit against the defendant, the Chapman & Dewey Land Company, in the Mississippi Chancery Court, to recover the amounts of certain assessments made against the lands of the defendant for the construction of a public ditch or drain in a drainage district known as Tyronza Drainage Canal, and to enforce the lien thereon. The drainage district was established by the

county court of Mississippi County under the provisions of sections 1203 to 1232 of Sandels & Hill's Digest. The complaint alleged in detail each step taken in the formation and establishment of the drainage district, the ascertainment of the benefits to the various tracts of land located in the district, and the assessment made against each tract for the construction of the ditch. It also set out in detail the letting of the contract for the construction of the ditch and its completion. The defendant filed an answer, in which it set forth several grounds upon which it resisted the recovery and enforcement of the assessments. The chancery court rendered a decree in favor of the plaintiff for the amounts of the various assessments against the several tracts of land of defendant and subjecting the lands to sale for the payment thereof. From this decree the defendant appeals to this court.

The defendant attacks the validity of the order of the county court establishing the drainage district on the ground that the termini of the ditch were changed from the points as set out in the petition. Upon the filing of the petition the county court appointed viewers who proceeded in manner prescribed by the then law to make an accurate survey of the proposed ditch and to perform the duties required by section 1204 of Sandels & Hill's Digest. The report of the viewers lengthened the ditch at its upper end, but maintained the route of the ditch as set out in the petition. It provided for excavations all along the route from said beginning point to a point where the ditch emptied into what is known as Tyronza Bayou. This bayou extends for a distance of about three miles to where it empties into Tyronza River. And, while the route and extent of the ditch was described from the said beginning point on to Tyronza River, no excavations were reported by the viewers as necessary in said Tyronza Bayou. But these alterations did not change the route of the ditch, and the lands of the defendant, being located between the terminal points, were not affected by the changes. In the formation of drainage districts under the above sections of Sandels & Hill's Digest, the original petition was not for the purpose of making a final location of the ditch. The viewers had a right to vary the same, and all proceedings were of an *ex parte* character until the report of the viewers was made and filed. It was then that the exact location of the ditch was fixed; and each tract of land affected thereby,

either by way of benefit or damage, was set out in the report.

After the filing of such report thus definitely describing the termini and route of the ditch, notice was given to all persons interested in and affected by the location of the ditch of its pendency in the county court, and a time was fixed in the notice when such persons could appear in the said court and be heard. From any order or judgment made by the county court in the matter any person feeling himself aggrieved thereby could appeal to the circuit court, where he was given a trial *de novo* on the matters. So that the defendant had an opportunity to appear in court and be heard on these objections which he now presents. The county court had the jurisdiction of the matter of the construction of the ditch, and had the right and jurisdiction to adopt the termini recommended by the viewers which altered the terminal points of the proposed ditch. *Cribbs* v. *Benedict,* 64 Ark. 555; *Driver* v. *Moore,* 81 Ark. 80.

And, upon the confirmation of the report of the viewers by the court, the termini and route of the ditch became conclusively fixed. And the places where and the extent of the work and excavations that should be done in the construction of the ditch became also determined by the order confirming the report of the viewers in these particulars, as well as the assessments of the benefits made against each tract. *Stiewel* v. *Fencing District,* 71 Ark. 17; *Overstreet* v. *Levee District,* 80 Ark. 462; *Driver* v. *Moore,* 81 Ark. 80; *Hale* v. *Moore,* 82 Ark. 75; *Board of Improvement Dist.* v. *Offenhauser,* 84 Ark. 257.

The Legislature provided that the drainage law should be "liberally construed to promote the drainage and reclamation of wet and overflowed lands; and amounts due contractors holding surveyor's certificates of acceptance shall not be defeated by reason of any defect in the proceedings prior to the order of the county court establishing the ditch, but such order or judgment shall be conclusive that all prior proceedings were regular and according to law." (Acts 1899, p. 321.)

The report of the viewers determined that the excavations in the ditch should only be made along its route to the point where it made a junction with Tyronza Bayou, and that it was not necessary to make any excavations in said bayou on to Tyronza River. The report in that respect was also confirmed by the

court, and, being unappealed from, it became a final determination that the excavations that should be done should only be in that portion of the ditch that extended from its beginning point down to Tyronza Bayou; that it would be practicable to construct the ditch and drain the lands in the district by that extent of excavations. In the opinion of the viewers and the surveyor and engineer who assisted them Tyronza Bayou from the point where the ditch made junction with it to the Tyronza River was a natural stream sufficient in width and depth to carry all waters that would be emptied into it to the river, without any excavations being made in said bayou. In the absence of fraud, that became conclusive.

After the confirmation of the viewers' report the county clerk proceeded to the letting of the contract. The defendant urges in this court that there is no proof that notice of the letting of the contract was given by the clerk. The complaint specifically and in detail sets out the notice that it alleges was given by the county clerk of the letting of the contract, naming the time and place of such letting and stating the manner in which the notice was given. To these allegations the defendant made only a general denial in its answer. This court has often held that a general denial of the allegations of the complaint is not sufficient; and that, under the Code, every material allegation of the bill not specifically denied in the answer will be taken as true. *Guynn* v. *McCauley,* 32 Ark. 97, 105; *McIlroy* v. *Buckner,* 35 Ark. 555, 561.

The object of this rule is to advise the opposing party as to what he must establish by proof. *Hecht* v. *Caughron,* 46 Ark. 132.

The defendant did not in its answer deny specifically the material allegations of the complaint which set out the giving of the notice by the clerk. But, in addition to this, this court has held that, after the work has been duly completed under the contract, the failure to give such notice is only an irregularity, and it will not affect the validity of the contract. *Stiewel* v. *Fencing District,* 71 Ark. 17; *Driver* v. *Moore,* 81 Ark. 80.

It is urged that the plaintiff is not the proper party to bring this suit. It appears that at the letting of the contract the General Dredging & Construction Company was the lowest bidder on all

the allotments of the ditch, and that the same was knocked off to that company, and that the clerk entered into a written contract with that company for the construction of the ditch. As provided by law, that company then executed a bond for the performance of the contract; and the plaintiff became surety on the bond. Thereafter, the General Dredging & Construction Company failed to carry out said contract, and the plaintiff took up and assumed the performance of the same. In this way the plaintiff assumed the position of the General Dredging & Construction Company and proceeded with the contract. As far as the defendant was concerned, it was as if the General Dredging & Construction Company had employed the plaintiff as its agent to perform the work and the requirements of the contract; and in effect it was that company going on with the contract. It is urged that, inasmuch as the contract was made with the General Dredging & Construction Company, and the certificates were issued in its name, that company should have instituted the suit, or should have been made a party to the suit. But it is alleged in the complaint that the contract and all interest therein were duly assigned to the plaintiff, and that he is the true owner of the certificates. In its answer the defendant itself alleged that the plaintiff "procured an assignment of said contract to himself." The contract and these certificates could be transferred without a written assignment thereof. *Heartman* v. *Franks,* 36 Ark. 501; *Lanigan* v. *North,* 69 Ark. 62. The plaintiff, being the owner of the certificate, was the real party in interest, and under our Code he is the proper party to prosecute this suit. Kirby's Digest, § 5999. But, if the defendant thought that the General Dredging & Construction Company had any interest in the subject-matter of this suit and desired that it be made a party, so that all interests in the subject-matter of the suit could be settled, it could have made a motion in the lower court, asking that that company be made a party. Kirby's Digest, § 6011. It did not do so; and its contention in this regard, now made for the first time in this court, is not well taken.

It is contended that the plaintiff did not complete the construction of the ditch on or before the time named in the contract, and on this account he is not entitled to recover. It appears from the evidence that the contract provided that the ditch should

be completed by January 1, 1904. Upon the expiration of the said time named in the contract the county court of Mississippi County made an order directing the county clerk to extend the time for the construction of the ditch from time to time not exceeding sixty days at any one time; and also in its order recited that the plaintiff was proceeding in good faith and as rapidly as possible with the construction of said ditch. The clerk made such extensions by indorsements on the contract every sixty days during the years of 1904 and 1905 until the completion of the ditch in December, 1905.

It is contended by the defendant that, by section 1219 of Sandels & Hill's Digest, it is provided that, if the job is not completed within the time fixed in the contract, the clerk may for good cause give further time, but not exceeding sixty days, for the completion of the work; and that therefore time is of the essence of the contract; and, because the plaintiff did not complete the ditch within said time, the contract became forfeited, and he is, therefore, not entitled to recover anything herein.

It is true that parties may agree upon what shall be the effect of a non-compliance with any of the stipulations of a contract; and so they may agree that the time of performance shall be of the essence of the contract. While the nature of the subject-matter may be such as to require prompt performance at the time stipulated, yet it must be so deemed and understood by both parties at the time of the execution of the contract, and ordinarily there should be an express provision making time of the essence of the contract before it will be so regarded. 2 Page, Contracts, § 1161.

In the case of *Ahl* v. *Johnson,* 20 How. 511, it is said that in equity the general rule may be said to be that time is not of the essence of the contract. And in *Secombe* v. *Steele,* 20 How. 94, it is said: "But it must affirmatively appear that the parties regarded time or place as an essential element in their agreement, or a court of equity will not so regard it. *Dermott* v. *Jones,* 23 How. 220; *Brown* v. *Guarantee Trust Co.,* 128 U. S. 403.

The contract herein was entered into under and in pursuance of the sections of the statute above referred to, which at that time regulated the construction of public ditches. But it is not provided in any of these sections of the statute in terms

that time should be of the essence of such contract, and the contract itself in this case does not contain any such express stipulation. There is no provision of the statute which says that the contract shall be void or of no effect in event the work is not completed within the time named in the contract. The failure to complete the work within the time named might be ground for taking action to avoid the contract; but some affirmative act would have to be taken to so avoid it, if the contractor is still proceeding with the work in good faith and with reasonable dispatch. The statute provides that the contractor upon entering into the contract shall execute a bond obligating himself to pay any damage that might accrue by reason of a failure to complete the job within the time named in the contract. This provides a remedy and a relief to all persons damaged by reason of any failure to perform this stipulation of the contract. The right of the clerk to re-let the contract, without actually doing so, did not avoid the contract. The expiration of the time did not in itself work an avoidance of the contract.

In the case of *Driver* v. *Moore,* 81 Ark. 80, it is said: "Lastly, it is contended that the time for completion of the contract had expired by limitation before the construction of the work alloted to appellants' land, and the contract became void. The expiration of the time did not avoid the contract. It only afforded grounds for avoiding the contract, but no steps to do this were taken. On the contrary, the clerk made an indorsement on the contract, by order of the county court, extending the time for the completion of the work." In the opinion in that case it does not state the length of time for which the completion of the work was extended. But an examination of the record in that case shows that the time for the completion of the work was extended for sixty days at a time for a period of two years. The period of each extension and the number of the extensions in the case at bar and in that case are about similar.

In this case there is no allegation, and no proof, that any damage accrued by reason of the failure to complete the ditch within the time named. The nature of the undertaking is such that it would not ordinarily be expected or contemplated that the completion of the work within the prescribed time was absolutely essential; and, in the absence of such express provision or in-

tendment either in the statute or in the contract, we do not think that it can be considered that time is of such essence of the contract herein as to avoid it solely by the expiration of the time.

It is contended by the defendant that the work was not done in compliance with the terms of the contract. It is urged that the contract provided that certain openings should be made on each side of the ditch, and it is contended that this was not done. But there was sufficient evidence to sustain the finding of the chancellor that the work was done substantially in compliance with the requirements of the contract in this regard. In addition to this, the official whose duty it was to inspect the job and to find whether or not it was completed according to the contract testified that he made examination of the work and found that same was completed according to the specifications. It is also urged that no excavations were made in Tyronza Bayou. But under the contract this was not required. The contract was made in conformity with the report of the viewers, which report is by the specific terms of the contract made a part of it. The viewers reported that it was only necessary to make excavations in the ditch from the beginning point down to the junction of the ditch with the Tyronza Bayou, and they placed stakes at each 100 feet along the route of the ditch to that point, which became stake number 785, and was the last stake to which the excavation should be made. Upon the basis of that extent of work, the viewers computed the number of cubic yards of earth that would be required to be excavated; and it was upon that report and computation that the bid was made and the contract entered into. The officer whose duty it was to inspect the work and determine whether same had been performed according to the contract did inspect the same and did find that it was completed according to the contract, and did execute certificates of acceptance stating that the shares allotted to the lands of the defendant had been completed according to the specifications of the contract. The official who thus inspected and accepted the work was the official named by the law; and the persons who signed the certificates of acceptance were the officials specified in the provisions relating to the construction of ditches.

The law required these officials to inspect the work, and made it their duty to make a finding whether or not the same

had been completed according to the contract. Their decision should be as binding as the decision of parties who have been selected by individuals to finally decide questions as to manner of construction. Their decision should be sustained unless it can be shown that it was obtained by fraud, or that there was such gross mistake as would necessarily imply fraud. That has not been shown in this case. *Hot Springs Ry. Co.* v. *Maher,* 48 Ark. 522; *Ozan Lumber Co.* v. *Haynes,* 68 Ark. 185; *Kihlberg* v. *United States,* 97 U. S. 398; *Martinsburg & Potomac Ry. Co.* v. *March,* 114 U. S. 549; *Chicago, S. F. & C. R. Co.* v. *Price,* 138 U. S. 185; 2 Cooley on Taxation, p. 1280.

It is further urged that there is a variance between the description of the lands in the assessments and in the certificates. We have carefully examined into this, as well as the descriptions of the lands in the decree. We find that the following tract, W. ½ S. E. ¼ section 33, township 12 N., range 9 E., is erroneously set out in the decree. The amount of the assessment of $124.37, which is declared a lien upon this tract and the tract described as E. of R. E. ½ of N. W. ¼, section 33, T. 12 N., R. 9 E., should be declared a lien only on the last-named tract, and the tract first above described should be stricken from the decree. The decree should be modified in that regard. We also find that the amount per cubic yard for excavation of earth is calculated and placed in the decree at 11½ cents per cubic yard, and that this is correct. We also hold that under Sandels & Hill's Digest, § 1232, as amended by the act of the General Assembly of Arkansas, approved May 8, 1899 (Acts 1899, page 320, § 3), the plaintiff was authorized to institute suit in the courts for the recovery of the assessments.

It therefore follows that the decree of the lower court will be modified by striking therefrom the following tract of land: W. ½ of S. E. ¼ of section 33, township 12 N., range 9 E. And, so modified, the decree of the lower court is in all respects affirmed.

BATTLE, J., dissenting.