## MADISON BOND CO. v. SCOTT COUNTY, ARK.*

### SCOTT COUNTY, ARK., v. MADISON BOND CO.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1923.)

Nos. 5989, 5993.

**1. Bridges ☞11—Limit on appropriations not applicable to bridge appropriations.**

Crawford & Moses' Dig. § 1985, as to limitation on "appropriations for all county or district purposes," does not apply to appropriations for bridges.

**2. Bridges ☞11—Appropriation for bridge construction not invalidated by lack of funds.**

Appropriation by a quorum court for bridge construction was not invalid, because of the fact that all of the available county funds had been appropriated, and the levy made to the full constitutional limit for general county purposes had been exhausted in specific appropriations.

**3. Counties ☞165—Warrants not void because payable at future date.**

That county warrants were made payable at a future date, with provision that all should become due and payable, if any of the series were not paid when due, did not invalidate them, though the statute provides that warrants shall be present promises to pay, as the stipulation as to future payment, if void, could be disregarded.

**4. Counties ☞165—That affidavits attached to claims for warrants were defective would not prevent recovery on warrants.**

Even if affidavits were defective, which were attached to claims filed by bridge-building company, demanding delivery of county warrants as stipulated in bridge-building contracts, such defects would not prevent recovery in action on the warrants sold to plaintiff by the company, if it was entitled to delivery of the warrants under the contracts, and the indebtedness evidenced by them was justly due and owing.

**5. Bridges ☞20(2)—Failure to give notice of letting bridge contract held mere irregularity.**

Failure of county to give notice of letting of bridge construction contract *held* a mere irregularity, not affecting the validity of the contract.

**6. Bridges ☞20(2)—Payment on executed bridge contract not to be avoided by showing mere irregularities.**

After performance by bridge-building company of contracts to construct bridges, the county could not avoid payment by pleading and proving mere irregularities in the execution of the contracts, such as that the bond given by the contractor did not meet the requirements of the statute.

**7. Counties ☞167—Purchaser of warrants from builder of defective bridge, accepted by authorities, held entitled to recover thereon.**

Where a bridge constructed for the county was inspected and accepted by the commissioners charged with these duties under the statute, and warrants were issued and delivered to the bridge builder pursuant to such report, plaintiff, purchasing the warrants from the bridge builder, was entitled to recover on them from the county, notwithstanding evidence that the bridge was defectively constructed, so that it washed away the following spring.

**8. Bridges ☞20(4)—Bridge construction contract held abandoned, precluding recovery by building company.**

Where bridge construction company, after unloading at the railroad station the steel for a bridge for the county and then receiving, ac-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied September 12, 1923.

cording to its contract, 75 per cent. of the warrants stipulated as the price of the bridge, later surrendered its charter and abandoned the contract, in which abandonment the county acquiesced, *held*, that plaintiff purchaser of such warrants and having only the rights of the company, could not recover thereon, as one cannot at the same time repudiate the performance of a contract and claim the benefits derived from the contract.

Kenyon, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by the Madison Bond Company against Scott County, Ark. From the judgment, both parties appeal. Reversed in part, and affirmed in part.

Thomas S. Buzbee, of Little Rock, Ark. (George B. Pugh and H. T. Harrison, both of Little Rock, Ark., on the brief), for Madison Bond Company.

Daniel Hon, of Ft. Smith, Ark., for Scott County.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. Madison Bond Company, a Wisconsin corporation, brought suit in the court below upon warrants issued by Scott county, Ark., the defendant. The bond company purchased the warrants from the Southern Road & Bridge Builders, Inc.

On the 7th day of September, 1918, the Southern Road & Bridge Builders, Inc., contracted to furnish "all materials and tools and erect complete in place" for Scott county three bridges, which are referred to in the record as Deep Ford bridge, Murphy's Ford bridge, and Cauthorn Ford bridge. The county agreed to pay the prices stipulated—

"in the following manner, to wit: Scott county scrip, 75 per cent. of which shall be due and payable when the steel for said bridge is delivered at the railroad station; the balance when said work is completed."

There was a separate contract for each bridge, identical in language, except the price agreed upon. At the date of these contracts the county was without funds, and had unpaid warrants outstanding.

The county in its answer attacked the validity of the contracts and warrants. It also alleged as defenses that the Deep Ford bridge was never constructed, and that neither Murphy's Ford bridge nor Cauthorn Ford bridge was constructed in accordance with the plans and specifications and in accordance with the contract. Equitable relief was asked, and the case was tried in the court below as one in equity.

The trial court gave judgment for plaintiff on the warrants issued for the construction of the Cauthorn Ford bridge. On the warrants issued for the construction of Murphy's Ford bridge and Deep Ford bridge, the court held:

"That the warrants and certificates of indebtedness * * * issued on contracts for erection of bridges at Murphy Ford and Deep Ford * * * are not valid for want of consideration."

Both parties have appealed.

[1] Under the statutes of the state, all expenditures of county funds must be made pursuant to appropriations by the quorum court. It is provided (section 1500 of Kirby's Digest [Crawford & Moses' Digest, § 1985]) that:

"The court shall specify the amount of appropriations for each purpose in dollars and cents, and the total amount of appropriations for all county or district purposes for any one year shall not exceed 90 per cent. of the taxes levied for that year."

On the 4th of October, 1917, the quorum court made appropriations to meet the current expenses of the county for the year 1918, aggregating $10,925. The tax levy was fixed at 5 mills. Following this the court appropriated $20,000 for the construction of the Cauthorn Ford bridge, $20,000 for the Murphy's Ford bridge, and $20,000 for the Deep Ford bridge. At the date of these appropriations the county was without funds and had unpaid warrants outstanding.

It appears from statements introduced in evidence that the appropriations made by the quorum court for current expenses for the year 1918 were slightly more than 90 per cent. of the amount which was collected under the 5-mill tax levy for that year.

It is the contention of the defendant that the appropriations made by the quorum court for the construction of the three bridges were void, and the warrants sued upon invalid, because of the 90 per cent. limitation contained in the statute above quoted. This contention cannot be sustained. The act of the Legislature authorizing the appropriation of funds for the construction of bridges (Crawford & Moses' Digest, § 824, et seq.) is legislation of similar character to that authorizing the appropriation of funds for the construction of courthouses. Referring to the courthouse act, the Supreme Court of Arkansas, in Thompson v. Mayo, 135 Ark. 143, 204 S. W. 747, said:

"It is insisted by appellant that the appropriation was void for the reason that the quorum court appropriated more than 90 per cent. of the taxes levied in the year 1916 or 1917 for the construction of the courthouse. * * * This court is irrevocably committed to the construction that current and ordinary expenses of the county for the year do not include expenditures for building a courthouse, and that the limitations placed upon the quorum court and county court and the agents of the county by Act 67, Acts 1879, do not affect contracts for building courthouses under sections 1009 to 1025 inclusive, of Kirby's Digest" (Crawford & Moses' Digest, § 1929 et seq.).

The construction of the court that appropriations for courthouses do not come within the limitations of the statute above quoted is, we think, equally applicable to appropriations for bridges.

[2] As already stated, under the statute of the state all expenditures of county funds must be made pursuant to appropriations by the quorum court. If the quorum court made no valid appropriation for the construction of the bridges in question, then the contracts let by the county judge were invalid, and the warrants sued upon are void. It is argued by counsel for defendant that the orders made by the quorum court on the 4th of October, 1917, purporting to be appropriations, were not so, because, to use counsel's language:

"All of the available funds had been appropriated and the levy made to the full constitutional limit for general county purposes exhausted in the specific appropriations made under the requirements of the statute. No levy was made for these attempted appropriations for bridges, and none could be made, for the maximum constitutional levy had already been made and appropriations made to cover it. Can an appropriation be made where there is nothing to appropriate? * * * The county did not have any part of any such appropriations, nothing to its credit, but, on the contrary, thousands of dollars indebtedness in outstanding warrants against the county."

This objection is also answered by the Supreme Court in Thompson v. Mayo, supra. The court said:

"The power to make an appropriation for building a courthouse, to fix the cost thereof, and to levy a tax for that purpose, was transferred from the county court to the quorum court. This transfer of power was effected by the repeal in express terms of section 1011 of Kirby's Digest and the enactment in lieu thereof of section 3, Act 217, Acts 1917. There is nothing in the plain wording of Act 217, Acts 1917, and no language contained therein from which it might be inferred that the Legislature intended by this transfer of power to limit the quorum court in fixing the cost of a courthouse or the appropriation therefor. * * * There being no express language or language from which it is necessarily inferable that the Legislature intended to place a limitation on the quorum court as to the maximum cost and appropriation for building a courthouse, we do not feel warranted in extending the limitation contained in section 1500 of Kirby's Digest to the court which has heretofore been held by this court to apply to current appropriations for county expenses only. Our construction of Act 217, Acts 1917, is that the act invests the quorum court with power to make an appropriation for building a courthouse in any sum it may deem proper, regardless of the amount of taxes which may be levied in any one year in the county."

[3] Objection is made to the form of the warrants, in that some of them are made payable at a future date, with the provision that all shall become due and payable if any of the series are not paid when due. Conceding that the statute provides that warrants shall be present promises to pay, and that the conventional form provided by the statute has been departed from, we fail to see any reason, and none has been suggested, why the warrants on that account should be held to be void. If the indebtedness evidenced by them is justly owing, and the stipulation for payment at a future date is without authority of law, the stipulation may well be disregarded and judgment given accordingly.

[4] It is urged that the affidavits to the claims filed by the Builders' Company did not conform to or comply with the requirements of the statute. Even if it be conceded that the affidavits were defective which were attached to the claims filed by the Builders' Company demanding delivery of the warrants as stipulated in the contracts, we fail to see how such defects could prevent recovery in this action, if the Builders' Company was entitled to delivery of the warrants under the contracts and the indebtedness evidenced by them is justly due and owing.

[5] The statute provides that contracts for the construction of bridges shall be let after notice, at public outcry, to the lowest and best bidder. It is alleged in the answer that these requirements of the statute were not complied with, and that they were let privately, without notice, and without competitive bidding. The files and rec-

ords of the county court show there was competitive bidding, and that the contracts were let to the lowest bidder. The files and records do not show explicitly and affirmatively that notices were posted as required by the statute. On the other hand, the files and records do not show that notices were not posted. The presumption is that notices were posted. There was some testimony, negative in character, that notices were not posted. But, irrespective of what the fact may be, the failure to give notice would be a mere irregularity, not affecting the validity of the contract. In Driver v. Moore, 81 Ark. 80, 98 S. W. 734, the Supreme Court of Arkansas said:

"The validity of appellee's contract for the construction of the ditch is attacked on the ground that the viewers made their final report one day in advance of the time fixed by the court, that there was no notice given of the letting of the contract, and because the contract was let en masse, instead of in separate allotments. These are mere irregularities which do not affect the validity of the contract."

See, also, Chapman & Dewey Land Co. v. Wilson, 91 Ark. 30, 120 S. W. 391.

In addition to the allegation that the contracts were let privately, without notice, and without competitive bidding, it is alleged that they were made and entered into between the Builders' Company and the county judge fraudulently and collusively, at grossly excessive prices. It is further charged that false and fraudulent entries were entered in the records of the county, purporting to show that the statute governing the letting of the contracts had been complied with, while in fact the requirements of the statute had not been complied with. The court below, by its general finding for plaintiff on the warrants issued for the construction of the Cauthorn Ford bridge, necessarily found against the defendant on the issue of fraud. We have read and carefully considered all the evidence in the record bearing upon this issue, and are convinced that the finding of the trial court was right.

[6] The contention that the contracts should be declared void because the bond given by the contractor did not meet the requirements of the statute must be overruled. After performance by the contractor, the defendant cannot avoid payment by pleading and proving mere irregularities in the execution of the contracts. Driver v. Moore, supra, and Chapman, etc., v. Wilson, supra.

The trial court did not err in sustaining the objection of plaintiff to the evidence offered to impeach the testimony of the witness Harris, especially in view of the evident purpose for which the evidence was offered, namely, to reflect upon the integrity of the county judge. For that purpose the testimony was clearly hearsay.

II. The evidence shows that the Cauthorn Ford Bridge was built in substantial compliance with the contract; that it was inspected and accepted by the commissioners charged with this duty under the statute; that the county court ordered the issuance and delivery of the warrants stipulated to be paid for the construction of the bridge. Clearly, the judgment for plaintiff upon these warrants was right.

[7] There is evidence in the record tending to prove that the Builders' Company did not place the concrete pillars for the Murphy's Ford bridge as deep as the contract called for, and that as a result of this

defect the bridge was washed away the following spring. Be that as it may, the proof showed that the bridge was inspected and accepted by the commissioners charged with these duties under the statute, and that pursuant to the report of the commissioners the county court ordered the issuance and delivery of the warrants stipulated to be given for the construction of the bridge. The statute committed to the commissioners appointed by the quorum court the duty of seeing that the bridge was built according to contract, and, there being no question of fraud involved, courts are powerless to relieve the county from loss occasioned through the mistakes of judgment or want of care of its officers. We are of opinion plaintiff was entitled to recover on the warrants issued for the construction of the Murphy's Ford bridge.

[8] The Deep Ford bridge was not built at all. The steel for it was unloaded at the railroad station, and the Builders' Company, as it had the right to do under the contract, demanded and received 75 per cent. of the warrants stipulated as the price of the bridge. One of the commissioners for the Deep Ford bridge testified that Mr. Tate, the manager of the Builders' Company, told him that:

"We would have to appropriate some more money. He said security had gone down and labor had gone up. * * * He said he could not afford to built it."

Afterwards the company surrendered its charter, and in January, 1920, it ceased to exist. The facts show conclusively that the Builders' Company abandoned and, so far as it was possible for it to do so, rescinded the contract for the Deep Ford bridge. The county acquiesced. The Builders' Company (and plaintiff stands in its shoes) cannot repudiate the terms of the contract and refuse to perform its part of it, and at the same time claim or retain the benefits derived from the contract. Brady v. Oliver, 125 Tenn. 595, 147 S. W. 1135, 41 L. R. A. (N. S.) 60, Ann. Cas. 1913C, 376.

When the Builders' Company refused to construct the Deep Ford bridge, and later disincorporated, the contract being executory in its nature, the county had a right to consider the contract as ended, and to demand what was justly due it under these conditions. Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. The county was clearly right in resisting payment of the warrants issued and delivered for the construction of the Deep Ford bridge, and it would have been entitled to a decree, had it asked for it, directing the surrender and cancellation of these warrants.

The judgment of the court below, dismissing the suit as to the warrants issued for the construction of Murphy's Ford bridge and vesting title in the wreckage of the bridge in plaintiff, is reversed, and the court is directed to enter judgment on said warrants for plaintiff. In all other respects the judgment is affirmed. Costs to Madison Bond Company.

KENYON, Circuit Judge (dissenting). I am unable to concur in the foregoing opinion. In my judgment, the warrants issued for the construction of the Murphy's Ford bridge were not legal, and the judgment of the trial court as to them was, I believe, correct.