BELL v. WADLEY.

4-7194

177 S. W. 2d 403

Opinion delivered January 10, 1944.

570

*Reid & Evrard* and *Walter L. Pope,* for appellant.

*W. Leon Smith,* for appellee.

GRIFFIN SMITH, Chief Justice. G. C. Wadley sought to replevy his $3,000 check held by Walter L. Pope as escrow agent. Pope's answer was that actual parties in interest were W. F. and Elna Bell, to whom proceeds were conditionally payable. The Bells intervened. By way of cross complaint they alleged that the fund was earnest money and part payment in respect of obligations assumed by Wadley in a written contract. There were other pleadings, including a motion by the cross complainants to transfer to equity, and Wadley's motion to remand, which was overruled. The appeal is from the Chancellor's order sustaining demurrers to the intervention and cross complaint of the Bells, and to their amended answer.

By contract of May 14, 1941, appellants (the Bells, who are residents of Blytheville, Arkansas) purchased of Metropolitan Life Insurance Company 546.32 acres in Stoddard County, Missouri, the price being $18,700. August 1, 1942, Wadley, for $34,145.02, purchased from appellants their interest in the land, a condition being that the buyer should pay 1942 taxes, and in turn receive rentals. The amount payable to Metropolitan was specified, $4,600.20 of the obligation having been discharged.

Wadley assumed and agreed to pay the remainder,[1] ". . . which balance shall be deducted from the total consideration of $34,145.02 going to the said Bells."

Wadley, through the War Department, had contracted with the U. S. Government to sell 160 acres for $15,000. There was no relation between ownership of this property and the land in Stoddard County.

By his August contract Wadley was to pay in cash $15,000 of the amount going to the Bells, this to be due when Metropolitan's deed should be delivered. The item of $3,000 placed with Pope was considered a part of the $15,000, an agreement being that a portion of the $3,000 should be used ". . . to pay the minimum sufficient amount to the Metropolitan Life Insurance Company upon said contract of purchase under Clause No. 17 thereof for the purpose of obtaining a deed. . . ." Balance of the $3,000 was payable to appellants with delivery of the deed. With payment of $15,000, Wadley was to execute, acknowledge, and deliver to the Bells a second mortgage on the Missouri land to secure the balance due them. Final paragraph of the contract is copied in the margin.[2] The Bell-Metropolitan contract was, by express terms, made assignable. It was delivered to Wadley.

The Court thought it was without jurisdiction because the *res* was land in another State; also that Arkansas and Missouri statutes [3] localize causes of action affecting real property. Appellee has not appealed from the Court's order overruling his motion to remand to Circuit Court, having apparently elected to accept the favorable decree. [This order was not appealable at the time it was made (*Womack* v. *Connor*, 74 Ark. 352, 85

---

[1] This would have been $13,999.80, although the figures were not mentioned in the contract.

[2] "It is agreed and understood that immediately upon the payment to the said Wadley of the amount due him by the War Department under this option contract above mentioned this deal will be closed and the balance of the cash going to the said Bells will be paid and the two balance purchase money notes will be made and delivered, it being provided in said notes that they may be paid in full on or before the due dates."

[3] Pope's Digest, §§ 1386 and 8254; §§ 873 and 1257 Revise Statutes of Missouri, 1939.

S. W. 783) but might have been tested later by direct or cross appeal.] The prayer of the cross complaint was ". . . that on a final determination of this cause, the plaintiff and cross defendant be compelled to perform the contract of purchase made Exhibit A to the intervention; and that they have any and all other proper and equitable relief."

If, as this Court has said, the relief asked operates upon the land itself, then the proceeding is in *rem;* hence, the action is local and must be brought in the county where the land is situated. *Harris* v. *Smith,* 133 Ark. 250, 202 S. W. 244.

In *Fidelity Mortgage Company* v. *Evans,* 168 Ark. 459, 270 S. W. 624, it was held that as an incident to the general and equitable relief prayed for it might be necessary not only to direct cancellation of certain notes and mortgages, but to decree a sale to satisfy a purchase money lien. It was then said: "At any rate it is manifest that under the pleadings and prayer for general relief, the action of the Court affected the land in Logan County."

An imperative rule of the common law is that the Courts of one State are without jurisdiction in actions that are local in their nature—actions that involve subjects within the territory of another State. 7 R. C. L.; § 97, p. 1059. Related rules (10 R. C. L., Equity, § 115) are that title to real property, and the validity or invalidity of a devise or conveyance thereof, depend on the *lex rei sitae;* hence, it is said, a Court of Chancery has no more jurisdiction than has a Court of Law to make a decree which will directly affect either the legal or equitable title to lands situated in another State. *Cash* v. *O'Connor,* 205 Ark. 904, 172 S. W. 2d 27.

The Chancellor, as persuasive ground for sustaining the demurrers, cited *Dowdle* v. *Byrd, Guardian,* 201 Ark. 775, 147 S. W. 2d 343. He expressed apprehension (without directly holding) that the action was not maintenable because the Insurance Company was not a party.

In the Dowdle-Byrd opinion it was said that if the purpose of a bill in Chancery and effect of the decree are to reach and operate upon land, then the proceeding is in *rem*, and, under § 1386 of Pope's Digest, is local and must be brought in the county where the property is situated. There was the further statement, however, that the object of Byrd's suit was to compel Dowdle to accept conveyance of real estate and to pay therefor in accordance with his contract, ". . . and if he refused to do so, having acquired the outstanding title of the Federal Land Bank, to have a lien therefor decreed upon the land and the land condemned to satisfy same. Such an action is necessarily local, under § 1386, as it is to recover an interest in real estate."[4]

We do not think the Dowdle-Byrd case is authority for the proposition so broadly stated by appellee that where the Chancery Court has *personam* jurisdiction it is without authority to enter a decree based upon a contract dealing with land merely because the realty is in another State. Nor is the holding in *Arkansas Mineral Products Company* v. *Creel*, 181 Ark. 722, 27 S. W. 2d 1003, controlling here. In that case it was held that a suit, effect of which was to compel reconveyance of realty sold under execution, was a local action maintenable only where the land was situated. But in the same opinion there is reference to § 115, 10 R. C. L., Equity, relied on by appellee in the instant controversy. The stated doctrine is that in cases of contract, trust, or fraud, a Court of equity having jurisdiction of the parties is competent to entertain a suit for specific performance or to establish a trust, or direct a conveyance, although the contract, trust, or fraudulent title pertains to land in another State or Country, irrespective of the fact that such lands are necessarily affected by the Court's decree. There is the limitation that this jurisdiction is restricted to those cases in which the relief decreed can be obtained through personal obedience of the parties.

[4] The decision was also predicted upon Dowdle's act in purchasing at Federal Land Bank's foreclosure sale, thereby acquiring an outstanding title.

574

The holding in *Muller* v. *Dows*, 94 U. S. 444, 24 L. Ed. 207, was that while a Court of equity cannot send its processes into another State or deliver possession of land in another jurisdiction, it can command, and by process against the defendant, force a transfer of the title. To the same effect are cases cited in 19 American Jurisprudence, Equity, § 25, in support of the rule that Chancery, with jurisdiction of the defendant, may decree any equitable remedy enforcible against him.

The law, as stated by the textwriter for American Jurisprudence, is almost a literal adoption of what is said in Ruling Case Law. The newer publication, however, cites additional and more recent authority.

While this Court, in *Standard Oil Company of Louisiana* v. *Reddick*, 202 Ark. 393, 150 S. W. 2d 612, found that the Greene Chancery Court did not err in refusing to restrain an Arkansas citizen from prosecuting a tort action in Mississippi, the opinion approvingly quoted *Phelps* v. *McDonald*, 99 U. S. 298, 25 L. Ed. 473, in which Mr. Justice SWAYNE said:

"Where the necessary parties are before a court of equity, it is immaterial that the *res* of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the *lex loci rei sitae*, which he could do voluntarily, to give full effect to the decree against him. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree *in personam* according to those equities, and enforce obedience to their decrees by process *in personam*."

For other expressions on this subject see 58 C. J., Specific Performance, pp. 1024, 1031, 1118; 21 C. J., Equity, pp. 150 and 194; 25 R. C. L., Specific Performance, p. 324; R. C. L., Specific Performance, p. 5569, Perm. Suppl.; 10 R. C. L., Equity, § 115.[5]

As applied to real property the words "affecting," "relating to," "involving," and other synonymous

---

[5] See also, *Hume* v. *Kirkwood*, 216 Ala. 534, 113 S. O. 613.

terms, are not uniformly applied by authorities who merely state an abstract legal or equitable principle without reference to qualifying facts.

In the case at bar Wadley (whose contract with the Bells involved obligations it was mutually contemplated would be discharged in Mississippi County) sought to replevy the check he had placed with Pope.[6]

If, as appears *prima facie,* surrender of the check had not been authorized by the Bells, then compliance with Wadley's demands would have involved a breach of his contract. This raised an issue cognizable at law; but, when appellants alleged it was Wadley's intent to avoid consequences of his purchase, and when they asked that the cause be transferred to Chancery for specific performance, the latter tribunal acquired jurisdiction unless appellants' prayer was colourable. The record does not indicate want of merit in appellants' plea that they have benefits of a contract, the terms of which are not disputed.

Having selected a domestic Court as the forum in which his right to repossess the $3,000 check should be determined, appellee will not be heard to deny jurisdiction of the tribunal to which his action was transferred if, in fact, the rights of appellants to specific performance are not thwarted by the rule of law appellee seeks to invoke by alleging that the Chancery Court of Mississippi County was without jurisdiction to hand down a decree affecting transactions based on real property in Missouri.

It is our view that the relief prayed for would not affect title to the Stoddard County land in. the sense prohibited by the decisions; nor is it an impediment that Metropolitan is absent as a party. Of course the trial Court could not require the insurance company to accept Wadley's notes. There is no power to fix a lien, to

---

[6] Later, by agreement, the check was cashed and its money equivalent substituted. There was also a stipulation that $12,000 of the payment of $15,000 made by the War Department be deposited in the Farmers Bank and Trust Company at Blytheville to be drawn only on the order of the Circuit or Chancery Court, or upon the joint order or check of the parties litigant.

order sale, or to enter any decree which if recorded in the foreign jurisdiction would cloud title to the property. But it is not sought to do any of these things unless we speculate upon an unexpressed intent of appellants, to be implied from their prayer for general relief. This we may not do when by a more reasonable construction they would be entitled to have the contract specifically performed by orders the Court had power to make.

The decree is reversed with directions to overrule the demurrers.