Broyles *v.* Summers.

5-1031                                          294 S. W. 2d 766

Opinion delivered November 5, 1956.

*Terral & Rawlings,* for appellant.

*Reed Williamson,* for appellee.

Lee Seamster, Chief Justice. On September 11, 1954, the appellants, Paul E. Broyles and Elizabeth Broyles, his wife, through their agent, F. W. Broyles, contracted to sell a house and lot in Jacksonville, Arkansas to appellees, W. J. Summers and Alma Summers, his wife, for the consideration of $3,000. Under the terms of the purchase agreement appellees paid $100 down and agreed to pay $50 per month beginning October 20, 1954, until a total of $500 had been paid, with interest, at which time the appellants were to execute a deed to appellees and retain a lien for the balance of the purchase price. The appellees took possession of the property and made the

monthly payments in accordance with the terms and conditions of the contract, up to and including the payment of May 20, 1955.

Thereafter, on June 20, 1955, the appellees, with full knowledge and permission of the appellants, assigned the contract to one Tony Liemke, Jr. and Betty Liemke, his wife. The appellees executed and delivered a warranty deed to the Liemkes, whereby appellees conveyed their interest in the property for a consideration of $350; $100 being paid down and a lien retained for the balance. The deed further provided that the Liemkes assume and agree to pay the unpaid balance due appellants by appellees under the terms of the purchaser's agreement. The Liemkes executed a note to appellees in the sum of $250, whereby the vendors lien on the land was acknowledged.

The record reveals that the Liemkes made one payment — June 20, 1955 — to the appellants, for which they received proper credit. On July 20, 1955, the Liemkes delivered to appellants a check for the July payment, but before appellants could cash the check the Liemkes notified them that they had stopped payment on the check and did not intend to make any further payments. After the Liemkes had notified appellants of their intentions, they gave to appellees (1) the purchase agreement, (2) the warranty deed to the land, and (3) the key to the house.

The appellees contend that on July 23, 1955, they delivered to appellants their check for the July payment, said check being accepted and retained over night by appellants and returned the next day with the explanation that appellants had decided to re-possess the property.

The record reveals that when appellees made their May 20, 1955 payment, they had paid a total of $500 on the principal and according to the terms of the contract of sale they were entitled to a warranty deed from the appellants. The purchaser's agreement provided that appellants were to retain a vendors lien for the unpaid balance and would furnish an abstract of title certified

to the date of the agreement showing merchantable title. The appellants failed to comply with these provisions of the contract.

On August 8, 1955, the appellees tendered to appellants the entire balance due under the purchaser's agreement. This payment was refused by appellants and appellees placed the money in escrow for the benefit of appellants.

The appellees filed the instant suit in Pulaski Chancery Court, Second Division, on September 2, 1955, requesting specific performance on the sales contract. The trial court entered a decree in favor of appellees, ordering specific performance of the contract. This appeal follows.

For reversal, appellants cite the following points:

"First: The Summers had assigned all of their interest in the property to the Liemkes.

"Second: The Summers had executed and delivered to the Liemkes their warranty deed conveying the property to the Liemkes.

"Third: Pursuant to a sale of the property by the Summers to the Liemkes, and in consideration thereof, the Summers surrendered possession of the property to the Liemkes who later cancelled the contract of sale and returned the property to the Broyles."

We find that the trial court was correct in ordering specific performance on the contract.

(1) The appellees and the Liemkes, by mutual consent, effectively rescinded their contract and the assignment of the sales contract. The verbal rescission of the assigned contract coupled with delivery thereof, was a complete re-assignment of the contract. The appellees were the real parties in interest. *Chapman and Dewey Land Company* v. *Wilson,* 91 Ark. 30, 120 S. W. 391.

(2) The deed executed by appellees to the Liemkes was not effective due to the fact that it was not effec-

tive until appellants complied with the terms of the contract and issued a deed to appellees.

(3) The Liemkes would have no authority to cancel the sales contract with appellants. They had failed to pay appellees for their interest in the contract and appellants had never released the appellees from the unpaid balance due on the contract. Furthermore, the appellants had breached the terms of the contract by failing to issue a deed to the appellees.

The preponderance of the evidence shows that the Liemkes never attempted to cancel the sales contract with appellants, but to the contrary turned the contract back to the appellees, whom they had not paid. Appellees retained a lien on the property for the balance due them by the Liemkes. The appellees were not in default and never in any way breached the sales contract with appellants.

We find that appellants are required, under the terms of their contract with appellees to make and deliver to appellees a warranty deed to the land. They will also be required to furnish appellees an abstract of title showing a merchantable title to the land. When appellants have complied with these provisions, they will be entitled to the balance of the purchase price.

The decree is affirmed.