**Osro COBB, Plaintiff,**

v.

**NATIONAL LEAD CO., Inc., Defendant.**
**No. LR-62-C-175.**

United States District Court
E. D. Arkansas, W. D.
Feb. 26, 1963.

G. Thomas Eisele, Little Rock, Ark., for plaintiff.

Eugene A. Matthews of Wootton, Land & Matthews, Hot Springs, Ark., for defendant.

HENLEY, Chief Judge.

This is an equitable action brought by plaintiff, Osro Cobb, as assignee of his father, P. Cobb, against the defendant, National Lead Co., Inc., to secure specific performance of alleged contractual obligations incurred by defendant in 1961. Defendant has moved to dismiss the complaint on the grounds that there is a defect of parties and that venue is improper.

More specifically, defendant contends that P. Cobb is an indispensable party plaintiff; that the action is local in nature, and venue thereof is fixed in the Hot Springs Division of the Western District of Arkansas by virtue of what is now Ark.Stats., 1947, § 27–601; and that, even if the action be characterized as transitory, venue is fixed in the Hot Springs Division of the Western District by virtue of Ark.Stats., 1947, §§ 27–608 and 27–613, and, at least to some extent, by 28 U.S.C.A. § 1393(a).

Plaintiff is an individual citizen of the Western Division of the Eastern District of Arkansas. His father, P. Cobb, is a citizen of the Hot Springs Division of the Western District of Arkansas. Defendant is a Delaware corporation authorized to do business in Arkansas and actually doing business in the Western District of this State. It does no business in the Eastern District, but its statutory agent for service is an Arkansas corporation domiciled in the Eastern District. Service was had on that agent. The amount in controversy is in excess of $10,000, exclusive of interest and costs.

In 1953 plaintiff's assignor obtained from the Government a 20 year mining lease covering approximately 300 acres of land in Montgomery County, Arkansas, supposedly underlaid with commercial deposits of barite, a mineral used extensively by defendant in its manufacturing

operations. The defendant owns or holds leases on lands adjacent to and perhaps surrounding the Cobb lease.

█ Prior to August 1961 plaintiff, acting for his father who is of advanced age, commenced negotiations with defendant looking toward an assignment to defendant of the Cobb lease, which lease was assignable subject to the approval of the Government. It is the position of plaintiff that an agreement was reached under the terms of which the Cobb lease was to be assigned to defendant which was to pay a stipulated advance royalty of $1,300, together with minimum royalties to be credited against earned royalties based upon actual production of ore from the lease. Plaintiff contends further that it was a part of the agreement, and part of the consideration for the assignment, that defendant at its own expense would initiate and prosecute a program of exploratory drilling on the Cobb tract to determine whether extraction of ore from that tract was feasible; that if such extraction turned out to be feasible defendant would operate under the assignment, otherwise the assignment would be subject to cancellation by defendant.[1]

The negotiations between plaintiff and defendant resulted in a written contract, a copy of which is attached to the complaint as an exhibit. This contract provides for an assignment of the Cobb lease to defendant, and provides for the payment of royalties, including advance and minimum royalties, to P. Cobb, and for cancellation of the agreement by defendant upon notice. But, the written instrument contains no reference whatever to any program of exploratory drilling.

The complaint alleges that pursuant to the agreement governmental approval of the assignment of the Cobb lease was obtained in due course, and that a formal assignment was delivered to defendant. It is further alleged that the defendant was fully qualified to accept the assignment, except that it was required to furnish the Government certain routine information; that defendant deliberately delayed supplying that information until it had completed a program of exploratory drilling on its own properties; that said program resulted in negative findings; and that thereafter defendant refused to perform any of its obligations under the Cobb contract.[2]

After the controversy between the parties had arisen, P. Cobb on September 22, 1962, executed and delivered to plaintiff a complete and unconditional assignment of assignor's rights under his contract with the defendant.[3] Plaintiff then filed his complaint in this Court seeking specific performance of defendant's alleged obligations to pay the advance and minimum monthly royalties and to initiate and carry out the exploratory drilling program. In connection with the drilling program the complaint alleges that a minimum of forty holes will have to be drilled on the Cobb lease in order to obtain the necessary information, and that the cost of the program will be in excess of $20,000.

█ There is no merit to defendant's contention that P. Cobb is an in-

---

1. Defendant has not answered the complaint, and for present purposes the Court must accept as true plaintiff's version of the transactions here involved.

2. In January 1962 defendant filed a formal disclaimer of interest in the Cobb lands with the Circuit Clerk of Montgomery County.

3. It should be emphasized at this point that P. Cobb did not by means of the September 22, 1962, assignment purport to assign the Government lease to plaintiff but only assignor's rights under his own contract with defendant, an assignment which would not appear to call for any governmental approval. The assignment to plaintiff does recite that in 1959 assignor had made a gift to plaintiff of his rights under the Government lease, and that the lease was left in assignor's name "merely as a convenience." As far as the merits of the case are concerned, that recitation may or may not have some significance, but the Court sees no significance to it at this stage of the proceedings.

dispensable party to the action. Rule 17(a) of the Federal Rules of Civil Procedure and Ark.Stats., 1947, § 27-801, provide that all actions shall be prosecuted in the name of the real party in interest, and under both federal and Arkansas law the person to whom a complete and absolute assignment of rights arising *ex contractu* has been made is the real party in interest and the proper person to bring suit to enforce such rights. Dunham v. Robertson, 10 Cir., 198 F.2d 316; Kilbourn v. Western Surety Co., 10 Cir., 187 F.2d 567; Momand v. Universal Film Exchanges, 1 Cir., 172 F.2d 37; 2 Barron & Holtzoff, Federal Practice & Procedure, §§ 482 and 511;[4] Robinson v. City of Pine Bluff, 224 Ark. 791, 276 S.W.2d 419; Love v. Cahn, 93 Ark. 215, 124 S.W. 259; Chapman & Dewey Land Co. v. Wilson, 91 Ark. 30, 120 S.W. 391. That the motive for the assignment may have been to enable plaintiff, rather than his elderly father, to sue and to bring suit in the Eastern District of Arkansas is not material. 2 Barron & Holtzoff, op. cit. § 482, pp. 17-18; Rosenblum v. Dingfelder, 2 Cir., 111 F.2d 406. Since plaintiff holds a complete and absolute assignment of his father's rights, plaintiff can maintain the action without joining his assignor.

■ In approaching the venue question it should be said first that, with respect to transitory actions commenced originally in federal court solely on the basis of diversity of citizenship, venue is determined by the provisions of 28 U.S. C.A., § 1391(a), and State venue statutes are not applicable. Mississippi Publishing Corporation v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185, aff'g Murphree v. Mississippi Publishing Corporation, 5 Cir., 149 F.2d 138; Steel Motor Service v. Zalke, 6 Cir., 212 F. 2d 856; McCoy v. Siler, 3 Cir., 205 F. 2d 498. A different rule prevails where a diversity case is removed to the federal court from the State court, which was the situation presented in Mayner v. Utah Construction Co., W.D.Ark., 108 F. Supp. 532, cited by defendant. In a removed case the federal court has only such jurisdiction as was possessed by the State court from which the action was removed, and if the State court lacked jurisdiction by reason of improper venue under State statutes, the federal court acquires none on the removal. This principle was expressly recognized in Mayner.

■ On the other hand, section 1391 (a) does not apply to "local actions" which are actions in rem or quasi in rem. Such actions must be brought within the jurisdiction where the res, or at least some part of it, is located physically. 1 Barron & Holtzoff, op. cit. § 72, and cases there cited. Hence, if this is a local action, it must be maintained, if at all, in the Western District of Arkansas where the lands covered by the Cobb lease are located.

■ While there seems to be a conflict in the federal decisions as to whether in a diversity case the question of "local" versus "transitory" action is to be decided by reference to general federal law or whether it is governed by State law, the conflict is not of great practical importance "for in most instances state law has developed in accord with the federal decisions." 1 Barron & Holtzoff, op. cit. § 72, p. 367. The Arkansas view as to the proper characterization of actions with respect to whether they are "local" on the one hand or "transitory" on the other seems to be a conventional one. Hence, the Court deems it unnecessary in this case to make a choice between federal as opposed to State law. The Court is willing to assume arguendo that, as defendant contends, State law is applicable. And the Court is willing to assume also that if this case falls within the scope of Ark.

---

4. See also: Farm Bureau Co-op Mill & Supply, Inc. v. Blue Star Foods, 8 Cir., 238 F.2d 326, and Young v. Garrett, 8 Cir., 149 F.2d 223, both of which cases arose in Arkansas, and in both of which the Court of Appeals for this Circuit recognized, at least by implication, the general rule that an assignee can sue in his own name, although holding that rule inapplicable in those particular cases.

Stats., 1947, § 27–601, the action is localized in the Hot Springs Division of the Western District of Arkansas and cannot be maintained here.

With a certain exception not here pertinent, § 27–601 [5] provides that certain types of cases must be prosecuted in the county in which the subject of the action, or some part thereof, is situated. Those types of cases are suits for the recovery of real property or of an estate or interest therein, suits for partition of real estate, actions for the sale of real property under a mortgage, lien, or other incumbrance or charge, and actions for injuries to real property.

The difficulty with defendant's reliance on § 27–601 is that this suit does not appear to fall within the terms of the statute. Plaintiff is not seeking to recover any real estate or interest therein, or to partition real estate, or to establish or foreclose any incumbrance on real property or to bring about a sale of real estate, and plaintiff is not suing for any injury to real estate. The relief which plaintiff seeks will not operate directly on the title to the lands covered by the Cobb lease, but will simply require the defendant to perform certain alleged obligations which it would appear that defendant has the ability to perform. To put the matter another way, plaintiff is not seeking any relief in rem or quasi in rem, but simply relief in personam.

 It is the general rule that where in a suit for specific performance of a contract involving land plaintiff seeks only in personam relief against the defendant and does not seek a decree which by virtue of in rem statutes will act on the title to the land itself, the action is considered to be in personam and transitory, and statutes like § 27–601 are inapplicable; hence, under this general rule the action may be maintained in any jurisdiction where service on the defendant can be obtained. And in the application of this principle it has been held that the courts of one State can render an in personam decree compelling specific performance of a contract relating to lands located in another State. 49 Am. Jur. Specific Performance, §§ 139–140; Leflar, The Law Of Conflict Of Laws, §§ 21 and 149; Annotations, 63 A.L.R.2d 456. That Arkansas is in full accord with this general rule seems clear. Phillips v. Phillips, 224 Ark. 225, 272 S.W.2d 433; Tolley v. Tolley, 210 Ark. 144, 194 S.W.2d 687; Bell v. Wadley, 206 Ark. 569, 177 S.W.2d 403; Nakdimen v. Brazil, 131 Ark. 144, 198 S.W. 524. And this rule would seem to apply *a fortiori* to suits for specific performance brought in one subdivision of a State with respect to property located in another subdivision where in personam relief only is sought. The Arkansas decisions construing and applying § 27–601 are numerous and the Court has found none of them which holds that said section is applicable to a claim for specific performance such as is advanced in this case. The Court is convinced that the statute is not applicable and that the action is transitory.

From the Court's characterization of the suit as transitory, it follows that venue is governed by 28 U.S.C.A., § 1391 (a), and under that statute venue is proper in either the district of the plaintiff's residence or in the district of the defendant's residence. Since plaintiff is suing in the district and division of his own residence and has obtained valid service, venue is proper in this district and division, and the Court has jurisdiction of the case and of the parties.[6]

An order will be entered denying the motion.

5. Section 27–601 was originally § 84 of the old Civil Code of Arkansas. The section has come forward in the various digests of the Arkansas statutes, including Crawford & Moses Digest of 1921 where it appeared as § 1164, and Pope's Digest of 1937 where it appeared as § 1386.

6. The situation presented here is not that contemplated by 28 U.S.C.A. § 1393(a), which section was involved in Torres v. Continental Bus System, Inc., S.D.Texas, 204 F.Supp. 347.